528 A.2d 580

Janet FARQUHAR, Appellant,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (CORNING GLASS WORKS), Appellees.

Supreme Court of Pennsylvania.

Argued March 10, 1987.

Decided July 9, 1987.

316

318

Paul J. Leventon, Leventon & Leventon, P.C., Pittsburgh, for appellant.

Raymond F. Keisling, Carnegie, David M. McCloskey, (co-counsel), for Corning Glass Works.

Thomas J. Magrann, Secretary, LeRoy S. Zimmerman, Atty. Gen., Harrisburg, for W.C.A.B.

Before NIX, C.J., and HUTCHINSON, FLAHERTY, ZAPPALA and PAPADAKOS, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice.

This is an appeal by allowance from an order of the Commonwealth Court which affirmed the order of the Workmen's Compensation Appeal Board which had affirmed a workmen's compensation referee's order denying appellant's petition to reinstate compensation benefits. For the reasons to follow, we will reverse the Commonwealth Court and order the Board to reinstate benefits. With one notable exception, the facts are not in dispute. The record before us discloses the following.

Janet Farquhar, appellant, had been an employee of the Corning Glass Works, appellee, in Charleroi since the summer of 1980. In February, 1981, appellant worked as a screen-maker responsible for manually producing the frames and screens used to make decorative designs for impressions upon appellee's products known as Corning Ware. In making screens and frames, appellant would cut and shape stainless steel mesh, punch holes into the mesh and screw ten to twenty metal screws of various sizes through the mesh into a metal frame, using a screwdriver.

This job also involved strenuous pulling of an overhead lever. The screen-making process was described as employing "a lot of physical labor."

In early February, 1981, appellant experienced pain and swelling in her upper right arm (appellant is right handed) and observed black and blue marks along her arm. On February 4, 1981, appellant complained of these problems to a company nurse, who referred her to the company doctor, Dr. Arthur Paluso, who in turn referred her to Dr. Leslie Morris, an angiologist who specializes in peripheral vascular diseases. Dr. Morris, Chief of the Vascular Clinic at Montefiore Hospital in Pittsburgh, examined appellant on February 6, 1981, ordered an emergency venogram test which revealed a blood clot (an "effort thrombosis" of her right subclavien vein which obstructed the flow of blood), and immediately admitted her to the hospital where she remained until February 21, 1981. During her stay in the hospital and following her discharge, appellant's thrombosis was treated with rest and anti-coagulent medications.

Compensation benefits were paid to appellant beginning on March 9, 1981, pursuant to a notice of compensation payable. Dr. Morris examined appellant on March 6, 17 and 31, 1981, observing continued improvement in appellant's arm, with the swelling reducing and the thrombosis resolving, although she continued to experience some pain in her arm which tired easily. On March 31, 1981, Dr. Morris advised appellant and her employer that she was "fit to return to work on Monday, April 6, 1981, however, not to her former occupation." Specifically, Dr. Morris informed Dr. Paluso that appellant "was permanently unfit for the type of work that she had performed in the screen department, which produced her present problem." Reproduced record (R.) at 73, Deposition Testimony of Dr. Morris at 23.

Appellant returned to work on April 6, 1981 as a screen-maker instructor at an average weekly wage equal to her wage at the time of her injury, and compensation benefits were suspended as of April 16, 1981. In her capacity as screen-maker instructor, appellant instructed several other

people in how to make screens for the Corning Ware. This job required her to demonstrate the screen-making operation, and therefore required her to perform the same work that had produced the effort thrombosis. On April 10, 1981, appellant experienced a flare-up of her arm injury, including swelling and soreness, and was examined by Dr. Morris who found the veins in her right arm to be slightly more dilated than when last measured on March 31. Dr. Morris advised appellant in no uncertain terms to avoid the strenuous physical labor involved with screen-making, especially screw driving and lever pulling. He also advised her to avoid similar exertions at home and elsewhere, and suggested a very mild exercise regimen (described by the doctor as lifting a very light weight for two minutes, twice a day, but without hyperabducting the arm).

Appellant returned to work the following Monday, again as a screen-maker instructor but in more of a supervisory capacity involving less physical strain and exertion. However, on June 8, 1981, appellant was informed by appellee that there was no longer any need for a screen-making instructor, that the only position available for appellant was that of screen-maker, and that she must either accept this position or be discharged.[1] Upon the advice of Dr. Morris, appellant did not accept this position as a screen-maker, and was discharged.

On August 7, 1981, appellant filed a petition seeking reinstatement of compensation and, additionally, seeking penalties and attorney's fees based upon allegations of appellee's bad faith in denying her compensation. Appellee contested the petition, and hearings were conducted before a workmen's compensation referee.

At these hearings, appellant testified in person, as did Dr. Morris' medical assistant who had specifically gone to appellant's place of work and observed her working as a screen-maker. Dr. Morris had been deposed on October 21, 1981, and his deposition testimony was admitted into evi-

1. The record also indicates that appellant was told she could file for compensation, but that the appellee would "fight it."

dence along with numerous medical exhibits and documents. Appellee presented no witnesses, testimony or other evidence at the hearings.

Dr. Morris' deposition testimony included his opinion that there was "true cause and effect" between both incidents of thrombosis and appellant's work as a screen-maker and screen-maker instructor, and this opinion was expressed to a "reasonable degree of medical certainty," and well beyond. R. 71. For example, Dr. Morris stated that "in my opinion, she should never make screens again as long as she lives," and that, without doubt, her effort thrombosis was caused by her work as a screen-maker. R. 80, 93 and 70–71. He further expressed the opinion that, although her symptoms had abated (a venogram on September 22, 1981 showed that the obstruction/occlusion in the affected vein had been resolved), there was "no room for debate" that to return to work as a screen-maker would expose her to great risk of another, potentially more dangerous thrombosis attack,[2] and that to perform such work would be like playing Russian Roulette. R. 86–94.

On cross-examination of Dr. Morris at the deposition, counsel for appellee asked a series of questions apparently designed to elicit an opinion that appellant was peculiarly susceptible to developing blood clots and that it was this susceptibility and not her work as a screen-maker which caused the effort thrombosis. R. 119–23 and 135–38. While Dr. Morris did not waiver in his opinion as to causation, and did not accept that appellant had a "peculiar physiological makeup" that caused the thrombosis, R. 121–22 and 135–36, he did state on cross-examination that "she may have what we call a tight thoracic outlet. She may have a little more pressure on the vein when it emerges from the thorax down the arm than you or I would have," and that she should "refrain from activities tending to aggravate that...." R. 136.

2. Dr. Morris stated that the consequences of another thrombosis episode "could be obstruction of the superior vena cava, which is the main blood vessel going into the heart." R. 124.

On February 9, 1982, the referee dismissed appellant's petition for reinstatement. The referee concluded that although appellant had sustained a work-related injury, she had since returned to work without a loss in earning power and her "total disability has not recurred" since that time. Referee's conclusions of law nos. 1, 3 and 4, Brief for Appellant at 32. These conclusions and denial of compensation were predicated primarily on the referee's 19th finding of fact, which is:

19. The basis for Dr. Morris's testimony that the claimant should not return to her position as a screen maker is his opinion that the claimant should refrain from activities that tend to aggravate some abnormality peculiar to the claimant's system or body structure, because there exists the possibility of another clot developing.

On appeal to the Workmen's Compensation Appeal Board (the Board), the referee's adjudication was upheld. The Board focused on the referee's finding of fact no. 19, and embellished it in affirming the denial of compensation benefits, stating:

On cross examination the doctor essentially testified the original disability was an aggravation of a preexisting nonwork-related condition which had resolved itself. He did not want her to resume her usual job because of the danger of again aggravating this underlying condition.... It is a fair inference to be drawn from Dr. Morris' cross examination that the underlying propensity for developing blood clots is not work-related.... This being the situation, the Claimant is not prevented from doing her regular job because of a work injury, but rather because of a nonwork-connected physical condition.

... It was not capricious on the referee's part to draw the inferences he did....

The Commonwealth Court, on appeal, further embellished the referee's finding of fact no. 19, stating (in an unpublished memorandum opinion) that this "is an unusual case in that Claimant suffers from a condition which renders her highly susceptible to injury when she does the job for which

she was trained." Slip op. at 1, Brief for Appellant at 38. That court then concluded:

It is clear from the record that Claimant's *condition, i.e.* susceptibility to developing thrombi, is not a result of her work for her Employer, but rather was a pre-existing condition. Claimant's *injury* however, was a direct product of her work, for which she properly received compensation. Inasmuch as Claimant is perfectly fit to do other work, as evidenced by her teaching prowess, the referee could hardly find that Claimant was totally disabled.

Slip op. at 2–3, Brief for Appellant at 38–39. The Commonwealth Court affirmed the Board.

We granted appellant's petition for allowance of appeal on June 30, 1986. Because there is no support on the record for the referee's finding of fact no. 19, because the referee and Board capriciously disregarded uncontradicted medical testimony and evidence, and because all lower tribunals have committed an egregious error of law, we now reverse.

Justice Hutchinson reiterated the appropriate standard of appellate review in *Jasper v. Workmen's Compensation Appeal Board (WCAB)*, 498 Pa. 263, 445 A.2d 1212 (1982), wherein we state:

Previous cases have set forth the scope of review where, as here, the fact finder's decision is against the party having the burden of proof in terms such as "capricious disregard of competent evidence", *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968), "willful disbelief of otherwise credible evidence", *Bullock v. Building Maintenance Inc.*, 6 Pa. Commonwealth Ct. 539, 297 A.2d 520 (1972) or internal inconsistency in the findings of fact and conclusions of law. *Halaski v. Hilton Hotel*, 487 Pa. 313, 409 A.2d 367 (1979). Without express findings on the issues noted above we cannot properly exercise our reviewing function, or determine whether there is internal inconsistency between the finding of initial disabling injury [a work related back injury] and termination [after claimant had become "normal" and

"symptom free"]. *At the very least the findings and conclusions of the fact finder must have a rational basis in the evidence of record and demonstrate an appreciation and correct application of underlying principles of substantive law to that evidence.*

*Id.*, 498 Pa. at 266, 445 A.2d at 1213 (emphasis added).

■ To establish eligibility for compensation, the claimant has the burden of proving two things—that the injury "arose in the course of employment" and that it was "related to that employment." *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 120, 439 A.2d 627 (1981). Where there is no obvious causal connection between an injury and the alleged work-related cause, that connection must be established by unequivocal medical evidence, i.e., evidence which establishes that to a reasonable degree of medical certainty, the injury was in fact work-related. *Id.*, 497 Pa. at 125, 439 A.2d at 632; *Lewis v. Commonwealth*, 508 Pa. 360, 365, 498 A.2d 800 (1985); *Halaski v. Hilton Hotel*, 487 Pa. 313, 317, 409 A.2d 367 (1979).

In construing the Act, we are always mindful that, being remedial in nature and intended to benefit the Pennsylvania workers, the Act must be liberally construed to effectuate its humanitarian objectives, *Krawchuk v. Philadelphia Electric Co.*, *supra*, 497 Pa. at 120, 439 A.2d at 630. Thus, this "Commonwealth has long endorsed the strong public policy of compensating employees who suffer injury and become disabled, totally or partially, in the course of their employment." *Lash v. WCAB*, 491 Pa. 294, 298, 420 A.2d 1325 (1980).

■ Applying these standards to the instant case, there is no doubt that appellant has met her burden of proving her eligibility for compensation benefits and that the lower tribunals erred in dismissing her petition for reinstatement. Initially, the referee's finding of fact no. 19 has no rational basis in the evidence of record and demonstrates a manifestly capricious disregard of competent and uncontradicted evidence. This finding, that *"the basis for Dr. Morris's testimony* that the claimant should not return to her posi-

tion as a screen maker *is his opinion that the claimant should refrain from activities that tend to aggravate some abnormality peculiar to the claimant's system or body structure . . . ,*" has virtually no support in the record; nowhere does Dr. Morris indicate or suggest that appellant possessed an "abnormality peculiar to [her] system or body structure" which "abnormality" caused her effort thrombosis and prevented her from returning to her position as a screenmaker. This "finding" seems to have been based upon the following isolated exchange between Dr. Morris and counsel for appellee during cross-examination:

Q. [By Mr. McCloskey for Appellee]

Does that mean you're taking issue with the statement that she may have a peculiar physiological makeup, as distinguished from you, I, the court reporter, and Mr. Leventon?

A. [By Dr. Morris]

It may not be a physiological makeup. *She may have what we call a tight thoracic outlet. She may have a little more pressure on the vein* when it emerges from the thorax down the arm than you or I would have.

Q. That is the type of condition I'm talking about, Doctor. If I used the wrong word, excuse me.

She has some particular system or some particular physical structure there that may be abnormal, and you want her to refrain from activities tending to aggravate that, correct?

A. *Yes, sir.*

Q. You're concerned about the development of a fresh or new area of coagulation?

A. *Yes, yes.*

Q. The clot is no longer present, but there exists the possibility of another clot developing, correct?

A. *Yes, indeed.*

Q. Now, Doctor, even though she may be able to do this work as a screen technician today, she shouldn't do so in your opinion; is that correct?

A. In my opinion, yes.

Q. To do so may be hazardous to her health in the future?

A. Yes.

R. 135–36.

It is difficult to glean the source of the referee's 19th finding of fact from the above-quoted portions of the doctor's testimony on cross-examination, *the only portions* of the 105 page deposition *that could remotely be viewed as supporting that finding* as to the "basis" for the doctor's opinion. It is clear, however, that in focusing narrowly on that singular "finding," and taking Dr. Morris' testimony out of context, all of the lower tribunals have totally ignored Dr. Morris' consistent, unequivocal and unwavering medical opinions and conclusions that appellant should not return to her former position *because* she had been seriously injured *as a direct result of work done* at her former position and ran the high risk of being seriously injured again by her work if she resumed that position.

Immediately preceding the above quoted testimony, Dr. Morris stated "There is nothing in my testimony that suggested that [appellant] has her own peculiar physiological makeup." R. 136. Immediately following the above-quoted testimony, Dr. Morris stated that appellant was not suited to return to her former job "because of her health, because of the damage that occurred to her *as a result of doing it* [her job] *before.*" R. 137. Additionally, interspersed throughout Dr. Morris' testimony were numerous unequivocal statements that appellant's condition, the "effort thrombosis" in her right arm, was directly caused by her work as a screen-maker, and not by any "abnormality" or peculiar pre-existing condition. Representative (but by no means exhaustive) samplings of that testimony include the following:

Q. Doctor, is it your professional opinion, with a requisite degree of medical certainty, that [appellant's] work caused the effort thrombosis?

A. *I have no doubt.*

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Did you formulate an opinion as to the causal connection between the increased circumference in her right arm with her return to work?

A. I felt that *it was true cause and effect.*

Q. Did you make a note of that in your Angiology Follow-up Report which you sent to Dr. Paluso?

A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Is that opinion founded with reasonable medical certainty?

A. Yes, sir.

Q. That has been constant and consistent with your first diagnosis back in February of this year?

A. *Yes, indeed, there has been no doubt in my mind.*

&ast; &ast; &ast; &ast; &ast; &ast;

A. ... I am *absolutely convinced* that in this case *the repetitive injury, or insult to which this girl was subjected, was the cause of her problem.*

R. 71–72, 80, 93, 152 (emphasis added).

As this Court recently stated, "the medical witness's *entire testimony* must be reviewed and taken as a whole and a final decision 'should not rest upon a few words taken out of context of the entire testimony.'" *Lewis v. Commonwealth, supra,* 508 Pa. at 366, 498 A.2d at 803 (emphasis added). The referee, Board and Commonwealth Court all pulled a few words from Dr. Morris's testimony completely out of context, distorted those words, and capriciously or wilfully disregarded his unequivocal medical opinion that appellant's work caused her injury.

Compounding and exacerbating this disregard of competent medical (and other) evidence is also a total failure of the lower tribunals to appreciate the substantive law of workmen's compensation; namely, that a claimant's disability need not be total in order to qualify for compensation,

and that the existence or nonexistence of a "susceptibility" to injury or pre-existing condition is no bar to recovery. Section 301(c)(1) of the Act has provided, since the 1972 amendments, as follows:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, *regardless of his previous physical condition,* arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury *or is aggravated, reactivated or accelerated by the injury.*

77 P.S. § 411(1) (Purdon's supp. 1986) (emphasis added). Thus, even if appellant did have a pre-existing condition rendering her susceptible to an effort thrombosis, she was entitled to compensation "regardless of her previous physical condition" under section 301(c)(1). As we stated in *Halaski v. Hilton Hotel, supra:*

> The fact that an employee was afflicted with a pre-existing physical defect or ailment which rendered him or her more susceptible to injury than an entirely normal person will not bar recovery.

> The injury need not be the sole or exclusive cause of the disability. It is sufficient if the injury materially contributed to the disability, rather than the disability resulting from the natural progress of the pre-existing condition.

487 Pa. at 318–19, 409 A.2d at 370 (citations omitted). *See also Krawchuk v. Philadelphia Electric Co., supra; WCAB v. Bernard S. Pincus Co.,* 479 Pa. 286, 388 A.2d 659 (1978). It is incredible that the lower tribunals would deny compensation because they perceived appellant's work-related injury to have aggravated a pre-existing non-work related condition. We insist that such lingering notions be finally laid to rest.[3]

3. We have recently stated that, since the 1972 amendments, "It may now be said, generally, that an employer takes an employee as he comes. Specifically included in the new statutory conception of "injury" is the job-related aggravation, reactivation or acceleration of a pre-existing disease, even if the underlying disease itself was not

▉▉▉ Equally incredible is the conclusion of the lower tribunals that, because appellant's symptoms had disappeared (i.e., her blood clot or thrombosis had resolved, swelling had gone down, etc.) and her condition had "normalized," she was not totally disabled and could not, therefore, recover compensation. This conclusion is absurd, and flies in the face of the substantive law. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968), firmly established that a claimant need not be so crippled or diseased as to be helpless in order to qualify for workmen's compensation; rather, it is sufficient that a claimant's injury rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured. More recently, in *Lash v. WCAB, supra,* we upheld an award of compensation to claimants who had become "lead-absorbers" by virtue of their prolonged work-related exposure to lead, and faced a risk of lead poisoning if they continued to perform the same work; otherwise, the claimants had no symptoms or disabling injuries. Nevertheless we stated:

> To require appellants to remain exposed until the advanced stages of lead poisoning had in fact been inflicted upon them in order to qualify for partial disability benefits *would be unconscionable.*
>
> \* \* \* \* \* \*
>
> *It would be barbaric to require an employee to continue in a position* where he is exposed to a toxic substance *until he is so ill that he physically is incapable of performing his job.* We have held that "[i]n the interpretation of the Workmen's Compensation Act, 77 P.S. § 1 *et seq.*, the word "disability is to be regarded as synonymous with "loss of earning power." *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 12, 104 A.2d 104, 107 (1954), and that the Act must be construed liberally to effectuate the underlying public policy.

491 Pa. at 297–98, 420 A.2d at 1326–27 (emphasis added). Similarly, in *Jasper v. WCAB, supra* at 498 Pa. at 266, 445

caused by a work-related injury." *Pawlosky v. WCAB,* 514 Pa. 450, 460–461, 525 A.2d 1204, 1209 (1987).

A.2d at 1213, we reiterated that "Our law of Workers' Compensation does not require an employee to bear the risk of probable severe and totally disabling reinjury by return to heavy work on pain of foregoing all compensation."

In the case before us, appellant was seriously and dangerously injured as a direct result of the physical stresses of her work which caused a blood clot or thrombosis. Because of the nature of the condition, the consequences threatened to be more severe if she were to experience another episode. *See* note 2, *supra*. Dr. Morris (who had been selected by appellee-employer) testified unequivocally that she should *never* return to work as a screen-maker, and that to do so would be like playing Russian Roulette. It was unconscionable for the appellee to require appellant to return to work as a screen-maker upon the threat of foregoing workmen's compensation, and it is inexplicable that the lower tribunals would deny her compensation simply because her symptoms were not currently manifesting, making her "not totally disabled." This is not the dark ages.

In *Barrett v. Otis Elevator Co., supra,* we held:

once the claimant has discharged his burden of proving that, because of his injury, he is unable to do the type of work he was engaged in when injured, the employer has the burden of proving that other work is available to the claimant which he is capable of obtaining.

431 Pa. at 458, 246 A.2d at 674. In *Jasper v. WCAB, supra,* we remanded to the Board for further proceedings to make, inter alia, a "determination of [claimant's] earning power in the light of available work under the principles set out" in *Barrett.* 498 Pa. at 265, 445 A.2d at 1213. The remand was necessary because the record failed to disclose "whether the Referee simply ignored the principles of *Barrett,* or failed to consider them" for other reasons. *Id.* Here, however, there is no need to remand for application of *Barrett* principles, as the uncontradicted record evidence demonstrates that appellee had no other work available to appellant, and appellee did not even attempt to demonstrate the availability of any other work in the geographic area.

Appellant is thus entitled to workmen's compensation benefits. Additionally, appellant alleges that appellee acted in bad faith in refusing to pay her workmen's compensation, and requests this Court to award her "counsel fees pursuant to Section 440 of the Workmen's Compensation Act, interest and costs." Section 440, 77 P.S. § 996 (supp. 1986), provides, in relevant portion:

### Contested cases regarding liability; attorney's fees and other costs; limitation and calculation

In any contested case where the insurer has contested liability in whole or in part, the employe ... in whose favor the matter at issue has been finally determined *shall be awarded,* in addition to the award for compensation, *a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time* to attend the proceedings: Provided, That cost for *attorney fees may be excluded when a reasonable basis for the contest has been established* ... (emphasis added).

By the plain language of section 440, the award of costs incurred for witnesses, necessary medical examination and the value of unreimbursed lost time to the successful claimant is mandatory, and admits of no exception. A limited exception is recognized for attorney fees where a "reasonable basis for the contest has been established," and where the compensation authorities exercise their discretion to exclude (*"may* be excluded") attorney fees.

Neither the referee nor the Board rendered a factual determination as to whether appellee had a reasonable basis for contesting liability, nor did the authorities exercise their discretion to determine whether to exclude attorney fees. Appellee asserts that because the lower tribunals found in its favor in denying compensation, a "reasonable basis" for contesting the claim has been established as a matter of law. We do not agree. We have found today that it was "unconscionable for the appellee to require appellant to return to work as a screen-maker upon the threat of foregoing workmen's compensation ..." We have further held

that the lower tribunals pulled Dr. Morris' words out of context, distorted those words, and capriciously or wilfully disregarded his unequivocal and uncontradicted medical opinion that appellant's work had caused her injury. While it may have some bearing on the "reasonableness" of its contest that appellee persuaded the referee, Board and Commonwealth Court to deny compensation, we cannot say on the record before us that such a reasonable basis was established as a matter of law.

■ It is necessary for the referee or Board, in the first instance, to determine whether, under the circumstances, the appellee had a reasonable basis for contesting liability and whether, if it so finds, it will exercise its discretion to exclude attorney's fees. An appellate court cannot initially exercise this discretion-indeed, we may only review the record to determine whether the lower tribunals have abused that discretion. Accordingly, we must remand the issues of the appropriateness of attorney's fees and what is a reasonable sum for the specified mandatory costs and expenses under section 440, to the Board for determination, and for such further proceedings as are deemed necessary. Any such proceedings shall not, however, delay the immediate payment of appellant's long overdue workmen's compensation benefits.

The Order of the Commonwealth Court is reversed, appellant's workmen's compensation benefits are reinstated, and the case is remanded to the Workmen's Compensation Appeal Board for computation of benefits and for a factual determination as to the reasonableness of appellee's contest of the claim and a determination of the amount of attorney's fees and other costs to be awarded to appellant under Section 440.

NIX, C.J., filed a concurring opinion.

HUTCHINSON, J., filed a concurring opinion.

FLAHERTY, J., filed a concurring and dissenting opinion joined by ZAPPALA and PAPADAKOS, JJ.

FLAHERTY, Justice, concurring and dissenting.

I agree that appellant-claimant's workmen's compensation benefits should, on this record, be reinstated. Thus, I concur in the mandate of reversal and remand for entry of an appropriate order. I would not however, remand for a determination of the reasonableness of appellee's contest of the matter. The reasonableness of the contest is a question of law, *Herre Bros., Inc. v. W.C.A.B. (Mumma)*, 75 Pa. Commonwealth Ct. 499, 502, 462 A.2d 907, 908 (1983); *Hartman v. W.C.A.B.*, 17 Commonwealth Ct. 609, 614, 333 A.2d 819, 822 (1975); and certainly one which we are competent to determine on appeal.

Although, in my view, the record is adequate to determine, as a matter of law, the reasonableness of the contest, as all the lower tribunals had before them the same deposition testimony and all interpreted it in the same fashion and favorably to appellee, and this supplies an adequate basis to conclude that appellee's persistent refusal to pay compensation, though ultimately determined to have been erroneous, was neither capricious nor, in the language of Section 440, 77 P.S. § 996, "unreasonable," Section 440 does seem to provide that, even where a reasonable basis for the contest is established, a successful claimant may be awarded attorney's fees. This award is in the sound discretion of the referee. As this is the first stage of the proceedings where claimant has prevailed, and the referee has not previously had a chance to consider the propriety of an award of attorney's fees, I would, thus, remand to the referee for a prompt determination of this question.

ZAPPALA and PAPADAKOS, JJ., join this concurring and dissenting opinion.

NIX, Chief Justice, concurring.

My reading of this record satisfies me that the medical testimony establishes that Ms. Farquhar did not, prior to her employment as a screen-maker, possess a physiologic propensity that caused the thrombosis, but rather the condition resulted from her activities while engaged in that

employment. I therefore agree that she is entitled to benefits because her present susceptibility to blood clots results from her former employment and the employer made no attempt to establish the availability of other suitable work accessible to appellant.

I also agree that section 440 of the Workmen's Compensation Act, 77 P.S. § 996 (Supp.1986), is here applicable; and I therefore join in the mandate of the Court.

HUTCHINSON, Justice, concurring.

I concur in the result. I also note my general agreement with the rationale by which Mr. Justice Larsen concludes that the authorities below erred in denying benefits. However, I believe footnote 3, slip op. at 15, Opinion Announcing the Judgment of the Court, is unnecessary to that rationale and I disassociate myself from it for the reasons set forth in my dissenting opinion in *Pawlosky v. W.C.A.B.*, 514 Pa. 450, 525 A.2d 1204 (1987).