539 A.2d 31

Sharon F. Pecht, Petitioner *v.* Workmen's Compensation Appeal Board (The Arrow Company, Cluett-Peabody), Respondents.

Submitted on briefs January 19, 1988, to Judges BARRY, SMITH, and Senior Judge NARICK, sitting as a panel of three.

458

*Lester H. Zimmerman, Jr., Barron & Zimmerman,* for petitioner.

*Joseph P. Green, Lee, Martin, Green & Reiter,* for respondents.

OPINION BY SENIOR JUDGE NARICK, March 17, 1988:

Sharon F. Pecht (Claimant) appeals from a decision of the Workmen's Compensation Appeal Board (Board). We affirm.

The record discloses the following. Claimant was employed by The Arrow Company, Cluett-Peabody (Employer) as a bottom hemmer. Claimant's job duties required her to pick up bundles which weighed approximately thirty pounds, place them on a table, and when finished sewing the shirt hems in her bundle, she was required to put the bundle on a truck. Claimant testified that her job involved a lot of bilateral twisting. On February 20, 1984, Claimant injured her back while in the course of her employment. As a result of this injury, she was unable to work and was treated by Dr. Philip G. Roberts, an orthopedic surgeon, from March 2, 1984 until July 10, 1984 for her back problem.[1] On May 1,

---

[1] The record also reveals that on February 23, 1984 Claimant was examined by Dr. Stanley Askin, an orthopedic surgeon.

1984 Claimant attempted to return to work but was unsuccessful. On May 17, 1984, Claimant filed a petition for workmen's compensation benefits.

At the hearing before the referee, Claimant in addition to testifying on her own behalf, presented the deposition testimonies of Dr. Roberts and Dr. Askin. No testimony was presented by Employer. The referee concluded that Claimant suffered an aggravation of a preexisting condition from February 20, 1984 until July 10, 1984. The referee, accepting the testimony of Dr. Roberts as credible, further opined that Claimant had fully recovered from her work-related injury as of July 10, 1984; however, she remained disabled due to a preexisting condition. Therefore, because any disability after July 10, 1984 was due to a pre-existing condition, the referee ordered compensation for the period February 20, 1984 to July 10, 1984, but denied compensation thereafter. The Board affirmed the referee. Hence, this appeal.

Initially we note that when petitioned to review a decision of the Board, our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa. Commonwealth Ct. 92, 525 A.2d 841 (1987). Claimant's sole assertion on appeal is that the referee and the Board erred in denying compensation benefits because in light of our Supreme Court's recent decision, *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass)*, 515 Pa. 315, 528 A.2d 580 (1987), Claimant is entitled to benefits.

In *Farquhar*, the claimant was employed by Corning Glass as a screen maker, a job which required much physical labor. In February 1981, the claimant suffered

a blood clot or thrombosis in her right arm. The medical testimony of claimant's physician unequivocally established that although the claimant *may* have a tight thoracic outlet (a pre-existing condition or abnormality), that claimant's thrombosis condition was *directly caused* by her employment and that under no circumstances could she return to her former job position. The Supreme Court opined in *Farquhar* that because of the nature of the condition suffered by claimant and the consequences threatened if she were to return to work that it was unconscionable to require the claimant to return to her former position as a screen maker upon the threat of foregoing workmen's compensation and that compenstion should not be denied simply because her symptoms were not currently manifesting.

In the case *sub judice,* Dr. Roberts testified on direct examination:

> Q. Would you relate what resulted from your continued treatment or seeing of Mrs. Pecht and what your findings were as a result of that?
>
> . . . .
>
> A. Anyhow . . . her diagnosis at that time was felt to be acute recurrent cervicothoracic strain . . . . she continued to be seen several occasions on March 26. At which time we suggested it would be reasonable for her to get back to work. She didn't make it. Saw her again April 3rd. Gradually improving but still having some difficulty getting her hands up over her head and so on. Difficulty with twisting. And this basically is the major portion of her— apparently her work activity. Saw her again May 15th. Again she apparently had tried to go back to work, lasted about three or four hours of 1st of May. And was unable to continue at same. And

we last saw her July 10th, 1984. At which time she had some low-grade aching across both shoulders and some restricted neck motion. . . . As I am sure you are both aware we wrote a rather detailed report to you on July 6th, '84 . . . The final paragraph of that letter which was pretty well relates to her difficulties . . . I'll just take the liberty of reading it to get it into the record for you.

'My notes further delineate that a long chat was held with her in which I felt that she had achieved the maximum benefit of conservative management and that this prolonged period of symptomatology was in excess of what one would consider reasonably related to a single reaching, twisting type injury at work.'

Something that we did not elude [sic] to, this is just paraphrased, this is x-ray evidence of a preexistant difficulty as described. . .

Q. You mentioned, doctor, some pre-existing conditions and I believe there were some X-rays taken.

A. That's correct.

Q. What did the X-rays show?

A. The X-rays of the neck demonstrated two areas of anterior spurring or calcification along the ligaments that run in front of the vertebra in the neck at the C-5, 6 and C-6, 7 levels which are the two of the lower levels of the neck. There was also some spurring anteriorly in the thoracic vertebra. . . . Basically, what this translates to is that either with—that some process has occurred which has caused calcification to fill in areas of soft tissue which are the stabilizing ligaments from the base of the skull all the way down to the level of the spine. In her situation

and what we're looking at primarily, the lower part of the neck and the upper part of the neck.

Q. How would reaching, twisting, sitting and bending effect [sic] these conditions?

A. . . . When there appears to be multiple level involvement, . . . calcium doesn't have much stretch to it and it would tend to limit the ability to twist and stretch . . .

See Deposition Testimony of Dr. Roberts from October 9, 1984, pp. 4-6.

We consider *Farquhar* distinguishable from the matter before us. In *Farquhar*, the claimant was unable to return to her former position and was entitled to disability benefits because the nature of the condition from which she suffered was a *direct* result of her employment. Here, the Claimant suffered an aggravation of a pre-existing condition in the course of her employment. The testimony of Dr. Roberts indicates that although all disability related to her employment has been resolved, Claimant is still disabled due to a pre-existing neck and back condition. This Court has held that where a compensable work injury has completely healed, but an employee is still unable to work due to a pre-existing disability, compensation benefits are not warranted. *Bailey v. Workmen's Compensation Appeal Board (Auto Rental Co.)*, 60 Pa. Commonwealth Ct. 338, 431 A.2d 1114 (1981).

Furthermore, it is long settled that when no additional evidence is received by the Board, the referee is the ultimate fact-finder, *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973); and the referee may accept or reject any testimony, including medical testimony, in whole or in part. *See Cisco v. Workmen's Compensation Appeal Board (A & P Tea Co.)*, 88 Pa. Commonwealth Ct. 174, 488 A.2d 1194 (1985). Also, it is within the referee's fact-

finding province to draw reasonable inferences from the evidence. *Oscar Mayer & Co. v. Workmen's Compensation Appeal Board (Manzi)*, 65 Pa. Commonwealth Ct. 514, 442 A.2d 1238 (1982). Therefore, Dr. Roberts' testimony, when taken as a whole, must serve as substantial support for the referee's findings. *See Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 498 A.2d 800 (1985). We believe that it does.

Accordingly, for the reasons set forth herein, we will affirm the Board.

ORDER

AND NOW, this 17th day of March, 1988, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.