## MEADVILLE FORGING COMPANY and Trans–General Services Company, Petitioners,

v.

## WORKERS' COMPENSATION APPEAL BOARD (HAWES), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 25, 1998.

Decided March 11, 1999.

John M. Cerilli, Pittsburgh, for petitioner.

Peter D. Friday, Pittsburgh, for respondent.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Meadville Forging Company and Trans–General Services Company (collectively, Employer) appeal from a decision of the Workers' Compensation Appeal Board (Board) affirming a decision of a Workers' Compensation Judge (WCJ) that granted the claim petition of Christopher Hawes (Claimant).

Claimant began working for Employer on March 15, 1995, as a "C.N.C. operator."[1] In this capacity, Claimant placed parts inside a chuck and programmed a computer to cut material needed to make parts. Claimant's work required him to grasp and manipulate metal parts with his hands and exposed him to several coolants that were used in the machines to keep the parts cool. The two

---

1. A CNC machine is a computer-operated lathe for machining steel.

coolants that Claimant worked with were Valcool and Syntolo.

On September 28, 1995, Claimant began to experience numbness in the tips of his fingers, and, as a result, Claimant lost the dexterity to manipulate the parts in the chuck. Claimant reported the problem to his foreman on that day. The next day, Claimant sought medical treatment from his family doctor, Dr. Frank Reusche, III. After examining the Claimant, Dr. Reusche provided him with an oral medication, Cardura,[2] which gave Claimant relief. In addition, Dr. Reusche restricted Claimant from exposure to Valcool.

Claimant returned to work on September 29, 1995, and informed his supervisor of his restriction. Accordingly, his supervisor provided Claimant with a pair of cotton cloth gloves to protect his hands, but Claimant continued to experience numbness and discoloration in his hands. Next, Employer offered Claimant a pair of latex gloves which also did not protect Claimant's hands from exposure to the coolants. Claimant was also given a pair of thick plastic gloves, but these gloves repeatedly became caught in the machine on which Claimant was working. In mid to late October of 1995, Employer reassigned Claimant to a jitney-driver position. In this capacity, Claimant drove a forklift around Employer's facility picking up various boxes of materials. The jitney-driver position did not expose Claimant to any chemical coolant, and he performed that job until October 26, 1995, when he was laid off because he could not perform his regular job duties.[3] Claimant has not worked since Employer laid him off, but he has been receiving unemployment benefits.

On October 31 1995, Claimant filed a claim petition seeking benefits for work-related "paresthesias to hands resulting from chemical exposure." (Claim Petition at 1.) Employer filed a timely answer denying the allegations in the petition, and hearings were scheduled before a WCJ.

During the course of the hearings, Claimant testified to the above events. He also noted that, during cold weather, his hands turn white and become numb. In addition, he offered his opinion that he was not capable of performing his time-of-injury job.

In addition to his own testimony, Claimant presented the deposition testimony of Dr. Reusche who is board certified in family medicine. Dr. Reusche opined that Claimant's physical condition was the result of his exposure to both Valcool and Syntolo, but Dr. Reusche was unable to explain exactly how the coolants affected Claimant.

On cross-examination, Dr. Reusche conceded that, in his practice, he treats very few patients with dermatological problems brought on by chemical exposure. In addition, Dr. Reusche noted that he was unaware of the exact date of exposure to Valcool as it relates to the onset of Claimant's symptoms. Dr. Reusche further opined that, if Claimant had been exposed to both Valcool and Syntolo, then both chemicals would be suspect as the agents responsible for Claimant's condition based upon the apparent correlation between Claimant's exposure to the coolants and the onset of his condition. Finally, Dr. Reusche concluded that Claimant suffers from circulation problems in his hands which mimic Raynaud's Phenomenon[4] and that Claimant's exposure to Valcool caused Claimant to develop a propensity to have Raynaud's Phenomenon.

In response, Employer presented the testimony of Doctor Leonard Snider, a board-certified dermatologist. Dr. Snider examined Claimant on November 21, 1995, and, at that time, Claimant indicated that he experienced numbness and pale whitening of the first two fingers of his left hand following his exposure to Valcool. As part of his examina-

**2.** Cardura relaxes the smooth muscles in the arterioles and capillaries, thus facilitating improved blood flow.

**3.** Gary Klink, Employer's plant manager, testified that the jitney-driver position was offered to Claimant in the hope that Claimant's condition would improve so that he could once again per-

form his regular job duties. It was not designed to be a permanent, light-duty position.

**4.** Raynaud's Phenomenon is marked by a sensitivity of the hands and fingers to cold, as a result of spasm of the digital arteries, with blanching and numbness or pain of the fingers.

tion of Claimant, Dr. Snider had him hold a cold can of soda for twenty minutes. Following this exercise, Dr. Snider observed blanching in the first two fingers of the left hand and noted that Claimant complained of numbness in those fingers. Color returned to Claimant's hand within 40 minutes after Dr. Snider removed the can from Claimant's hand.

Based on his examination of Claimant, Dr. Snider concluded that Claimant's condition was suggestive of Raynaud's Phenomenon. Specifically, Dr. Snider noted that there are two types of Raynaud's Phenomenon, primary and secondary. He further explained that the primary type of Raynaud's Phenomenon is idiopathic, but it can be elicited by using the fingers to tightly grasp objects or by cold temperatures. By contrast, Secondary Raynaud's Phenomenon has various precipitating factors including exposure to chemicals, such as vinyl chloride. Dr. Snyder stated, however, that, based upon his investigation, Valcool did not contain vinyl chloride. As part of his evaluation of Claimant, Dr. Snider contacted the manufacturer of Valcool and found that it had received no reports of Raynaud's Phenomenon following the use or exposure to Valcool. Based upon all the information elicited during the examination and upon his research following the examination, Dr. Snider concluded that Claimant suffered from Primary Raynaud's Phenomenon. He further noted that, although Claimant's work did not cause the Raynaud's Phenomenon, the repetitive grasping of the metal pieces involved in Claimant's time-of-injury job did aggravate the condition.

On cross-examination, Dr. Snider indicated that he would not recommend that a person with Primary Raynaud's Phenomenon work in a position where he would repeatedly use his hand to grasp a piece of material to be manufactured as this would aggravate the symptomatology.

Employer also presented the testimony of Gary Klink, Employer's plant manager, and Keith Jones, one of Employer's employees who works in the production department. Klink outlined Claimant's duties and acknowledged that Claimant had reported problems with his hands to him. Jones testi-fied that, in December of 1995, he observed Claimant stacking wood outside of his home, but, on cross-examination, he admitted that he did not observe Claimant's hands, nor did he ask Claimant how his hands were feeling that day.

On December 16, 1996, the WCJ issued a decision and order granting Claimant's claim petition and awarding him weekly disability benefits in the amount of $315.30 from the date Claimant was laid off, October 26, 1995. In reaching this decision, the WCJ accepted as credible the testimony of Claimant as it related to his symptoms, as well as his duties with Employer. The WCJ also accepted as credible the testimony of Dr. Snider and Gary Klink. The WCJ, however, rejected the testimony of Dr. Reusche because Dr. Reusche was not able to supply any reasoning as to why Claimant's condition was caused by his exposure to Valcool. The WCJ concluded that, although Claimant's exposure to Valcool did not cause the onset of the Raynaud's Phenomenon, Claimant's work did aggravate the underlying condition. Employer appealed to the Board.

On appeal, the Board relied on this Court's decision in *Cox v. Workmen's Compensation Appeal Board (Brookville Glove Manufacturing)*, 144 Pa.Cmwlth. 147, 601 A.2d 404 (1991), to affirm the WCJ's decision. The claimant in *Cox* packed cotton gloves into boxes for Employer. After performing this job for six years, the claimant informed her employer that she was having trouble breathing because of cotton dust that had accumulated where she worked and that she could no longer perform this job.

*Cox* then filed a claim petition alleging that she sustained textile workers' asthma as a result of her long exposure to the cotton fibers and alternatively argued that she sustained an aggravation of a pre-existing condition. During the hearings on the petition, Claimant presented expert medical testimony that her condition was caused by her work; however, this testimony was rejected by the WCJ. Employer presented medical testimony that Cox could have a pre-existing asthmatic condition that was aggravated by her work. Finding Employer's medical testimony to be

credible, the WCJ denied the claim petition, and the Board affirmed that decision.

On appeal to this Court, we reversed the Board and WCJ and concluded that Cox was entitled to benefits because she established that her condition, although not caused by her work, was aggravated by her work with her employer and, although she was asymptomatic when not working, if she returned to work, her symptoms would reappear. Citing *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 515 Pa. 315, 528 A.2d 580 (1987), we noted that

> a claimant need not be so crippled or diseased as to be helpless in order to qualify for workmen's compensation. Rather, it is sufficient that a claimant's injury rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured.

*Cox,* 601 A.2d at 408.

On appeal to this Court,[5] Employer argues that the Board and WCJ erred by concluding that Claimant was entitled to ongoing disability benefits based upon an aggravation of a pre-existing, non-work-related condition, which, Employer asserts, is no longer disabling.

█ It is, of course, well settled that a Claimant bears the burden of establishing entitlement to benefits and establishing all the elements necessary to support an award, including the fact that he suffered an injury which was caused by his work. *Bennett v. Workmen's Compensation Appeal Board (Fort LeBeouf School District),* 157 Pa. Cmwlth. 124, 629 A.2d 208 (1993).

Although, in general, an employer takes an employee as he comes, *Pawlosky v. Workmen's Compensation Appeal Board,* 514 Pa. 450, 525 A.2d 1204 (1987), our Supreme Court has recently had the opportunity to address the impact of a pre-existing, non-work-related injury on a Claimant's continuing entitlement to benefits. In *Bethlehem Steel v. Workmen's Compensation Appeal Board (Baxter),* 550 Pa. 658, 708 A.2d 801

(1998), the claimant was a 31–year old welder who had suffered from asthma since childhood. While working for Bethlehem Steel he suffered from breathing problems as a result of his exposure to fumes from paint used to paint freight cars. Although his lung functions returned to normal on August 22, 1991, Baxter did not return to work based on his physician's recommendation, and he filed a claim petition seeking total disability benefits on September 3, 1991.

At the hearings before the WCJ, Baxter's doctor testified that, if Baxter returned to work with Bethlehem Steel, he would suffer from asthma attacks as a result of his pre-existing, non-work-related asthmatic condition. The WCJ granted Baxter benefits, and both the Board and this Court affirmed that decision. Our Supreme Court, however, reversed the decision, concluding that a claimant is not entitled to benefits when no restrictions resulting from a work-related injury exist and only the *threat* of future recurrences of a pre-existing, non-work-related injury keeps a claimant from performing his time-of-injury job. The Court noted that

> The [Act] is the means to obtain compensation for injuries which has been substituted for common law tort actions between employees and employers. *Kachinski v. Workmen's Compensation Appeal Board,* 516 Pa. 240, 532 A.2d 374 (1987). It undermines the principles of the Act to impose liability on an employer for the existence of a condition present from childhood when no residual work-related injury is demonstrated. Baxter was properly paid worker's compensation benefits for the period of time he was disabled by conditions at his workplace, as those conditions exacerbated his pre-existing condition, but once he had fully recovered from that disability, he was ineligible for benefits.

*Bethlehem Steel,* 550 Pa. at 664–65, 708 A.2d at 804. Employer argues that Claimant in this appeal did not establish that his work with Employer **caused** the Raynaud's Phe-

---

5. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996).

nomenon, and, therefore, *Bethlehem Steel* controls.

■ In response, Claimant argues that he established that his employment **caused** the onset of the Raynaud's Phenomenon, and, therefore, under our Supreme Court's decision in *Farquhar*,[6] Claimant is entitled to benefits. We cannot agree with Claimant's argument. In his decision, the WCJ, utilizing the testimony of Dr. Snider, correctly concluded that Claimant did not suffer a new injury as the result of his work with Employer, but rather he sustained an aggravation of a condition that was unrelated to his work activities and that existed prior to his work with Employer. As noted above, the basis for our Supreme Court's decision in *Farquhar*, as well as the cases following it, and indeed the fundamental distinction between those cases and *Bethlehem Steel*, was the fact that the condition underlying the claimant's injury in *Farquhar* did **not** exist before his employment with the employer, and **the claimant established that the injury was caused by his work.** As the WCJ's findings illustrated, Claimant did not establish that his work caused the Raynaud's Phenomenon, only that it aggravated the condition, and, therefore, Claimant's reliance on *Farquhar* is misplaced.[7]

Accordingly, because Claimant did not establish that his work caused the Raynaud's Phenomenon, our Supreme Court's decision in *Bethlehem Steel* is controlling, and we are obliged to reverse the decision of the Board. In doing so, however, we acknowledge the fact that we present Claimant with a difficult decision: He can either forgo benefits under the Act and not return to work, or he can return to work and, all the medical evidence indicates, experience another outbreak of Raynaud's Phenomenon. Although we are sympathetic to Claimant's plight, we nonetheless are obligated to follow the precedent established by our Supreme Court.

## ORDER

**NOW,** March 11, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed.

Dissenting opinion by Judge KELLEY.

KELLEY, Judge, dissenting.

I respectfully dissent.

The work related aggravation of an underlying non-work related preexisting condition is a compensable "injury" under the Pennsylvania Workers' Compensation Act[1]. *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Company),* 514 Pa.

6. The claimant's work as screen-maker in *Farquhar* caused her to develop a thrombosis (blood clot) in her right arm. As a result of this condition, she was hospitalized until the clot dissolved and her condition significantly improved. Following her release from the hospital, she returned to work as screen-maker instructor, teaching others how to make screens at wages equal to her pre-injury wage, resulting in a suspension of her benefits. Due to the limited physical exertion required by this position, however, claimant experienced an aggravation of the thrombosis, and the claimant was advised to no longer physically exert her arm. The employer, however, noting that there was no longer a need for a screen-making instructor, offered the claimant her a screen-making position which the claimant refused. As a result of this refusal, the claimant was discharged.

Following her discharge, she sought a reinstatement of her benefits. At hearings on the petition, the claimant presented the testimony of her doctor who concluded that there was a cause and effect between the claimant's work as a screen-maker and screen-maker instructor and

the thrombosis. The WCJ denied the petition and both the Board and this Court affirmed that decision. Our Supreme Court, however, reversed the decision, concluding that, because Claimant established her work had caused the thrombosis and that, if she returned to work, she would be in danger of experiencing another thrombosis, she was entitled to continuing disability benefits. The Court noted that

> **It would be barbaric to require an employee to continue in a position** where he is exposed to a toxic substance **until he is so ill that he physically is incapable of performing his job.**

*Id.* at 329, 528 A.2d at 587 (quoting *Lash v. Workmen's Compensation Appeal Board*, 491 Pa. 294, 298, 420 A.2d 1325, 1327 (1980)). (Emphasis in original.)

7. Any reliance on *Cox* would also be misplaced. Although the Supreme Court in *Bethlehem Steel* did not explicitly overrule *Cox*, we find the holdings of *Bethlehem Steel* and *Cox* to be irreconcilable.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

450, 525 A.2d 1204 (1987). As a result, I would affirm the order of the board affirming the WCJ's decision granting Claimant's petition for benefits.