Gerald KNAPP, Petitioner,

v.

**WORKMEN'S COMPENSATION
APPEAL BOARD (GTE),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 6, 1995.

Decided Jan. 25, 1996.

Raymond E. Ginn, Jr., for Petitioner.

Robert A. Gallagher, for Respondent.

Before DOYLE and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

Gerald Knapp (Claimant) appeals an order of the Workmen's Compensation Appeal Board (Board) affirming an order of the Workers' Compensation Judge (WCJ) ordering GTE (Employer) to pay to Claimant temporary total disability benefits for the closed period of September 4, 1990 through April 13, 1992 and terminating Claimant's benefits effective April 14, 1992.

The WCJ made the following pertinent findings of fact:

4. The Claimant is currently 52 years of age. Prior to August 1990 the Claimant had been employed at the GTE plant for approximately thirty-one years.

. . . .

6. The Defendant's plant produces incandescent light bulbs, Christmas tree ornaments, and related glass products. In 1989 the Defendant/Employer opened a tile manufacturing facility at the plant to which the Claimant was assigned.

7. It is undisputed that the Claimant's work at the Defendant's plant resulted in the Claimant being exposed to chemical fumes, vapors, fine dusts generated by the glass and tile making processes, as well as, exposures to ubiquitous airborne contaminants such as pollen, dust, and dust mites.

8. Prior to 1990, the Claimant did not suffer any period of disability related to breathing problems, nor did he treat for allergies or asthma.

9. It is undisputed that the Claimant has an approximately thirty year history of cigarette smoking, using a pack to a pack and one-half per day.

10. In approximately March of 1990, the Claimant began to experience breathing difficulties.

. . . .

14. The Claimant's condition became so acute that his physician, Dr. Swagler, admitted the Claimant to the hospital on September 14, 1990 for testing and treatment. Thereafter, the Claimant was directed not to return to work, and, in fact, remained off work from September 4, 1990 until early March of 1991.

15. In this time frame, September 1990 to March 1991, the Claimant's condition improved such that he requested from his physician an opportunity to return to work. With restrictions, Dr. Swagler released the Claimant to return to work, but, shortly thereafter, the Claimant suffered a recurrence of severe breathing problems such that his employment was discontinued.

16. It appears undisputed that the Claimant's breathing problems are exacerbated by his exposure to the work environment. . . .

. . . .

24. Ultimately, Dr. Swagler concluded that the Claimant . . . [suffered from] asthma.

. . . .

26. In short, Dr. Swagler explained that the Claimant's symptoms are well controlled so long as the Claimant is not exposed to certain substances at work.... Dr. Swagler did not disagree that the Claimant's adult onset asthma, of itself, is not work-connected....

27. Dr. Swagler agreed that other non-work factors such as warmer, humid weather, exposure to pollen, etc., would also cause exacerbations of the Claimant [sic] adult onset asthma.

. . . .

32. The Defendant offered, by deposition, the testimony of Dr. John A. Kibelstis, a physician specializing in pulmonary disease, who examined the Claimant on April 14, 1992, reviewed relevant medical records and test results.... Dr. Kibelstis diagnosed the Claimant as suffering [from] asthma, chronic sinusitis, nasal septal deviation, recurrent upper respiratory infections, and hiatal hernia.

33. Dr. Kibelstis opined that the Claimant's asthma was a "concurrent disease with his occupation" rather than a causally related disease....

34. Dr. Kibelstis further explained that the work exacerbations would have been temporary....

35. Dr. Kibelstis did not dispute that the Claimant is disabled as a result of the asthma condition. Therefore, Dr. Kibelstis would not recommend the Claimant's return to work with the Defendant/Employer. However, as of April 14, 1992, Dr. Kibelstis was satisfied that the Claimant had recovered to his pre-injury condition.

(Findings of Fact Nos. 4, 6–10, 14–16, 24, 26–27, 32–35, WCJ's Opinion at 3–8; Reproduced Record (R.R.) at 264a–269a.)

The WCJ concluded that:

2. [T]he Claimant has carried his burden of demonstrating an exacerbation of a pre-existing condition due to exposure to pulmonary irritants at work which exposures disabled the Claimant from September 4, 1990 to April 19, 1992.[1] Nonetheless, the WCJ is not persuaded that the Claimant's ongoing disability is causally related to the Claimant's employment.

. . . .

7. The medical opinions of Dr. Swagler, Dr. Them, and Dr. Kibelstis, were all unequivocal and were rendered to a reasonable degree of medical certainty.

8. In many respects, the opinions of these physicians were similar. All agreed that the Claimant suffers adult onset asthma which is not related to the Claimant's employment with the Defendant, GTE. Moreover, all agree that the Claimant's asthma condition was aggravated or exacerbated by his exposure to chemical fumes, dust, and other air contaminants at the GTE plant, although these physicians disagreed as to the extent of this aggravation.

. . . .

13. It would appear that there is substantial case authority for the proposition that a non-work related asthma condition is nonetheless compensable if the Claimant's work environment would precipitate future, disabling exacerbations of the pathology. If the work exposure aggravates the pre-existing condition, the resulting disability is compensable.

14. It is also clear, however, that recent case law regarding proof of causation in injury claims has again emphasized a strict interpretation of causal relationship with regard to compensability. *Levering v. W.C.A.B. (Buck Co., Inc.)*, 621 A.2d 1178 (Pa.C., 1993) [*petition for allowance of appeal denied*, 536 Pa. 634, 637 A.2d 293 (1993)]; See also *Maraldo v. W.C.A.B. (City of Pittsburgh)*, 588 A.2d 971 (Pa.C, 1990) [*petition for allowance of appeal denied*, 527 Pa. 656, 593 A.2d 426 (1991)]. If the work exposure did not materially change and exacerbate the pre-existing non-work related condition, disability relating to that condition is not compensable.

15. It appears to the undersigned that, prior case law notwithstanding, the purposes of the Act are most consistent with the more recent, narrow interpretations of causation, i.e., that the Defendant and its

---

1. The April 19, 1992 date appears to be a typographical error as the WCJ terminated Claimant's benefits on April 14, 1992 in accordance with the accepted medical testimony.

Carrier are liable for disability related to employment, in this case, exposures to dust, fumes, and chemicals, only to the extent that these work conditions actually changes or aggravated the non-work pathology in issue and not on the basis that non-work conditions will, in future, be aggravated by additional work exposures.

16. In sum, the Defendant/Employer and Carrier are not responsible for the Claimant's predisposition to disability, where that predisposition, itself, is not related to the Claimant's employment. This approach does not vitiate the broadened definition of injury as per the 1972 amendments to the Act which would still hold the Employer responsible for causally related aggravations of pre-existing conditions, but, would not extend that rule to find liability for those aspects of disability which flow, from a non-work related source.

17. The WCJ will accept and rely upon the opinions of Dr. Kibelstis, which were internally consistent, logical, and persuasive. Again, many of these opinions were consistent with the opinions of the Claimant's experts, Dr. Them and Dr. Swagler. However, to the extent that the opinions of Dr. Them and Dr. Swagler can be read as ascribing an ongoing work-related disability to the Claimant's asthma, or aggravation of his asthma in September 1990, those opinions will be rejected.

(Conclusions of Law Nos. 2, 7–8, 13–17, WCJ's Decision at 8–10; R.R. at 269a–71a.) Accordingly, the WCJ ordered Employer to pay Claimant temporary total disability benefits at a rate of $419.00 per week for the closed period of September 4, 1990 through April 14, 1992, and terminated those benefits effective April 14, 1992. The Board affirmed.

■ On appeal to this court, Claimant argues that the WCJ erred in terminating his benefits effective April 14, 1992, contending that an employee with a preexisting condition which is aggravated by the workplace is entitled to compensation when returning to work would subject him to further aggravation of his preexisting condition. We agree.

■ "In a claim for workmen's compensation, 'the claimant has the burden of establishing the right to compensation and all of the elements necessary to support an award.'" *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle Markets, Inc.)*, 146 Pa.Cmwlth. 320, 605 A.2d 478, 481 (1992) (citation omitted), *petition for allowance of appeal denied*, 533 Pa. 603, 617 A.2d 1276 (1992). A claimant who is seeking compensation for an aggravation[2] of a preexisting condition must prove: (1) that the aggravation arose in the course of employment; and (2) that aggravation was related to that employment.[3] *Id.* Additionally, where a claimant's work-related aggravation symptoms of his preexisting condition have disappeared (because the claimant has been removed from the workplace), the **claimant may still seek total disability benefits on the basis that those aggravation symptoms would most probably reappear upon the claimant's return to her former position.** See *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass)*, 515 Pa. 315, 528 A.2d 580 (1987); *Pawlosky*, 514 Pa. 450, 525 A.2d 1204 (1987); *Povanda; Cox v. Workmen's Compensation Appeal Board (Brookville Glove Manufacturing)*, 144 Pa. Cmwlth. 147, 601 A.2d 404 (1991).[4]

**2.** Specifically included in the statutory conception of "injury" is work-related aggravation. *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)*, 514 Pa. 450, 525 A.2d 1204 (1987).

**3.** Section 301(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1) provides in pertinent part: "The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, *arising in the course of his employment and related thereto, . . . .*" (Emphasis added.)

**4.** We note, first, that the fact that *non*-occupational stimuli could also aggravate a claimant's preexisting condition does not affect a claimant's eligibility for continuing temporary total disability benefits for future *work*-related aggravations just as long as the work-related stimuli were a substantially contributing factor to the aggravation. *Pawlosky*. Nor is it necessary for a claimant, in these cases, to prove that the aggravation is peculiar to the occupation. *See id.* (Hutchinson, J., dissenting).

Of course, where there is no obvious causal connection between the aggravation symptoms and the alleged work-related cause, that connection must be established by unequivocal medical evidence. *Farquhar.* Accordingly, in a claim predicated upon the *future* recurrences of work-related aggravation of a preexisting condition, the claimant must establish by unequivocal medical testimony (1) that the **aggravation symptoms** are work-related, and (2) that the claimant cannot return to his or her former workplace because he or she will most probably suffer a recurrence of the aggravation symptoms. *See, e.g., Povanda,* 605 A.2d at 483 (unequivocal medical testimony established that claimant's preexisting Raynaud condition "would most certainly be aggravated"); *Farquhar,* 515 Pa. at 330, 528 A.2d at 588 (unequivocal medical testimony established that claimant "should never return to work as a screen-maker, and that to do so would be like playing Russian Roulette").

"Once the claimant has shown by credible evidence that he cannot perform his former work because of his injury [*i.e.,* the future work-related aggravation], the burden shifts to the employer to prove that other work is available which the claimant, although medically restricted, is able to perform." *Investors Diversified Services v. Workmen's Compensation Appeal Board (Howar),* 103 Pa.Cmwlth. 562, 520 A.2d 958, 962 (1987).

On appeal to this Court, Employer argues that a claimant seeking workers' compensation for future work-related aggravation, in addition to the above elements, must also establish that the *work-related aggravation actually worsened the pre-existing condition causing a "cumulative effect" such that future recurrences of aggravations are more likely than before the initial aggravation.* Both the WCJ and the Board appear to have adopted this argument. *See* WCJ's Opinion, Conclusion of Law No. 15;[5] Board Decision at 3.[6] We disagree.

We reiterate that pursuant to *Pawlosky, Farquhar* and their progeny, a claimant, to establish a claim for benefits for future work-related aggravation, need only establish that the aggravation "arose in the course of employment," that the aggravation is "related to that employment," and that the claimant can-

---

5. The WCJ concluded:
   15. It appears to the undersigned that, prior case law notwithstanding, the purposes of the Act are most consistent with the more recent, narrow interpretations of causation, i.e., that the Defendant and its Carrier are liable for disability related to employment, in this case, exposures to dust, fumes, and chemicals, only to the extent that these work condition actually changed or aggravated the non-work pathology in issue and *not on the basis that non-work conditions will, in the future, be aggravated by additional work exposures.*
   (WCJ's Conclusion of Law No. 15; R.R. at 270a–71a.) (Emphasis added.)

6. The Board stated:
   The WCJ was very careful and precise in finding that the work related aggravations of the asthma were *not cumulative in effect* but rather that Claimant returned to the nonwork related medical baseline after each aggravation.
   It is Claimant's position that once it is accepted that Claimant's pre-existing condition had been aggravated by Claimant's work then benefits are payable if a return to work would necessarily cause the condition to be aggravated again. (Citations omitted.) The Board does not agree. If the aggravation caused by Claimant's work has completely resolved and there is *no cumulative effect from the aggrava-*

*tion,* no continuing benefits are due if the only reason Claimant cannot return to work is the nonwork related condition. *Levering v. Workmen's Compensation Appeal Board (Buck Co.),* 153 Pa.Cmwlth. 533, 621 A.2d 1178 (1993), [*petition for allowance of appeal denied,* 536 Pa. 634, 637 A.2d 293 (1993)].
(Board's Opinion at 2–3; R.R. at 275a–76a.) (Emphasis added.)

The Board's reliance on our decision in *Levering* is misplaced. In *Levering,* the claimant suffered from preexisting bronchitis which was caused by cigarette smoking. In contrast to the instant case, the WCJ found that Claimant's bronchitis was not aggravated by her work environment but rather, the WCJ concluded that the claimant's smoking habit continued to aggravate her pre-existing bronchitis, and this *non-*work-related aggravation prevented the claimant from returning to work. That is, because neither the bronchitis nor the aggravation of the bronchitis were work-related, benefits were denied. Conversely, in the instant case, the WCJ specifically found that Claimant's aggravation symptoms were causally related to Claimant's workplace. Therefore, unlike *Levering,* the issue we must now address in the instant case is whether Claimant is precluded from returning to work because of the likelihood of future recurrences of work-related aggravation.

not return to the workplace due to the fact that the aggravation will most probably recur. Contrary to Employer's assertions, our careful survey of the case law reveals no additional burden on a claimant to establish a "cumulative effect" on his or her pre-existing condition.

■ The premise underlying compensation awards for future work-related aggravations is that if benefits were not awarded in these cases, the employees would return to the workplace where they would again become exposed and, thereafter, suffer disabling recurrences of work-related aggravation symptoms which are compensable under the Act. Rather than requiring employees with preexisting conditions to repeatedly reexpose themselves on pain of foregoing all compensation, we have recognized that the future recurrence of aggravation symptoms due to work exposure may be a compensable injury. Our Supreme Court in *Farquhar* explained:

> [A] claimant need not be so crippled or diseased as to be helpless in order to qualify for workmen's compensation; rather *it is sufficient that a claimant's injury rendered him or her unfit or unable to do the type of work he or she had been engaged in when injured....* 'Our law of Workers' Compensation does not require an employee to bear the risk of probable severe and totally disabling reinjury by return to heavy work on pain of foregoing all compensation.'

*Farquhar,* 515 Pa. at 329, 528 A.2d at 587 (citations omitted) (emphasis added).

Accordingly, an additional requirement on a claimant to establish a "cumulative effect" on his or her preexisting injury finds no judicial support under the Act.

The WCJ, therefore, predicated his decision upon an erroneous interpretation of the case law. In doing so, he failed to make a specific finding with respect to whether the accepted medical testimony establishes that Claimant cannot return to Employer's workplace because, if he does, he will most probably suffer a recurrence of the work-related aggravation.[7] If the WCJ makes such a finding,[8] then Claimant has met his burden under *Pawlosky,* and its progeny, and, thus, is entitled to compensation unless Employer

---

7. The opinion of the Board highlights the confusion regarding whether the likelihood of future recurrences of work-related aggravations of his asthma prevented Claimant from returning to his former workplace. Specifically, the Board stated that

> [t]he WCJ found it credible that Claimant's asthma condition prevented Claimant from returning to work with Defendant because the work environment would necessarily cause additional aggravation. **Benefits were denied because the WCJ determined, based on the medical evidence presented, that the reason Claimant could not return to Defendant's workplace was the pre-existing asthma not its aggravation.**

(Board's Opinion at 2; R.R. at 275a.) (Emphasis added.)

8. Of course, if the WCJ finds that Claimant cannot return to work due to some reason other than the probable recurrence of work-related aggravation, *e.g.,* disabling *non*-work-related aggravation of his preexisting asthma, then Claimant is not entitled to benefits. *See* our discussion of *Levering supra* note 6. *See also Maraldo v. Workmen's Compensation Appeal Board (City of Pittsburgh),* 138 Pa.Cmwlth. 18, 588 A.2d 971 (1990), *petition for allowance of appeal denied,* 527 Pa. 656, 593 A.2d 426 (1991); *Schneider, Inc. v. Workmen's Compensation Appeal Board (Dobbin),* 664 A.2d 232 (Pa.Cmwlth.1995).

In *Maraldo,* the WCJ awarded total disability benefits for a limited period of time for the Claimant's work-related angina but, denied continuing benefits for the claimant's coronary disease and by-pass surgery. Significantly, the evidence established that claimant's work-related angina had totally resolved and that Maraldo's underlying non-work-related coronary disease necessitated his by-pass surgery and precluded him from returning to work. There was no evidence presented that the possibility of recurrence of angina prevented the claimant from returning to work; in fact, there was no evidence presented that the angina would even recur upon the claimant's return to work. Accordingly, unlike *Pawlosky, Farquhar* and their progeny, Maraldo's preexisting condition, alone, prevented him from returning to work.

Similarly, in *Schneider,* the WCJ dismissed the claimant's claim petition, finding that the claimant's "smoking-related emphysema and chronic bronchitis were neither caused nor accelerated by his occupational exposure." 664 A.2d at 234. Significantly, the parties agreed that the claimant was incapable of returning to work due to his smoking related emphysema and chronic bronchitis regardless of his exposure to work place irritants. As in *Levering* and *Maraldo,* the claimant in *Schneider* could not return to work due to his *non*-work-related pulmonary disease and, accordingly, the principles set forth in the *Pawlosky* line of cases were inapplicable.

presents sufficient evidence of work available to Claimant within his capabilities.

Order reversed and this case is remanded for findings consistent with this opinion.

### ORDER

**NOW,** January 25, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed. The case is remanded for findings of fact consistent with this opinion.

Jurisdiction relinquished.