**Charles PUTZ, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LUPINI CONSTRUCTION COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 23, 1998.

Decided March 22, 1999.

Leslie J. Mlakar, Greensburg, for petitioner.

John P. Fedorko, Pittsburgh, for respondent.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Charles Putz (Claimant) appeals from an order of the Workers' Compensation Appeal Board affirming an order of a Workers' Compensation Judge (WCJ) which had awarded him total disability benefits from October 23, 1993, until September 16, 1994, at which time the WCJ ordered the benefits terminated based upon a finding that Claimant was no longer disabled and could perform his time-of-injury job.

In 1985, prior to beginning work for Lupini Construction (Employer), Claimant began to experience swelling and ulceration in his legs, and, in 1989, he was diagnosed as suffering from phlebitis.[1] Claimant's phlebitis required several periods of hospitalization. In September of 1993, Claimant began working for Employer as a roofer; his job required him to lift, bend and stoop, and Claimant was generally moving around and active all day. Shortly after beginning his work with Employer, Claimant again began to experience swelling and ulceration in his legs.

On October 20, 1993, Claimant went to see his treating physician, Doctor V.E. Reyes. At that time, Claimant's legs were ulcerated and, following an examination, Dr. Reyes recommended that Claimant stop working immediately. Claimant did not work the following day, because of rain, but did work on October 22, 1993, and, at that time, he notified his foreman, Tony Schiavo, that his doctor had instructed him to stop working. After working on the 22nd, Claimant's legs were purple and blue, swelled and ulcerated, and Claimant was admitted to McKeesport Hospital where he remained until October 31, 1993. Claimant has not worked since October 22, 1993, but he is receiving Social Security disability benefits, as well as a union disability pension.

On May 31, 1994, Claimant filed a claim petition seeking continuing total disability benefits from October 23, 1993, as the result of "cumulative phlebitis condition causing his legs to ulcerate." (Claim Petition at 2.) Employer filed a timely answer to the petition denying the allegations, and hearings were scheduled before a WCJ.

At the hearings, Claimant testified to the above events. In addition, he noted that, after the third day of work with Employer, the swelling and ulceration began to get progressively worse. Claimant also noted that he has trouble walking more than two blocks and also has difficulty walking up stairs. Claimant did concede, however, that his phlebitis had occurred before the start of his employment with Employer.

In addition to his own testimony, Claimant presented the testimony of Dr. Reyes. Dr. Reyes testified that, in June of 1991, Claimant had received treatment for an episode of stasis dermatitis[2] with ulceration, cellulitis and venous insufficiency.[3] In October of 1993, Dr. Reyes diagnosed Claimant as suffering from stasis dermatitis and infected

---

1. Phlebitis generally refers to an inflammation of a vein.

2. Stasis dermatitis is an erythema and scaling of the lower extremities due to impaired venous circulation.

3. Venous insufficiency is a circulatory disorder where the volume of blood flow from the lower extremities to the heart is decreased resulting in swelling in the lower extremities.

ulcers caused by chronic venous insufficiency. Dr. Reyes prescribed antibiotics and recommended that Claimant undergo a Doppler study, which revealed that Claimant had deep vein thrombosis[4] and varicose veins. As a result, Claimant was admitted to the hospital on October 22, 1993, and remained there until October 31, 1993.

In a follow-up visit on November 10, 1993, Dr. Reyes noted that Claimant's ulcers had healed. However, a subsequent Doppler study revealed that Claimant continued to suffer from deep vein thrombosis and, as a result, Dr. Reyes opined that Claimant could not return to his position as a roofer because it would aggravate Claimant's underlying medical condition. Dr. Reyes did **not** opine, however, that Claimant's work caused the phlebitis.

In response, Employer offered the testimony of Doctor Fredric Jarrett who is board certified in general surgery. Dr. Jarrett reviewed Dr. Reyes' notes from September of 1991 through June of 1994 and also examined Claimant on September 16, 1994. Based upon his examination of Claimant, Dr. Jarrett concluded that Claimant suffered from chronic venous insufficiency in both legs. Dr. Jarrett concluded that Claimant's venous insufficiency was not aggravated by his work as a roofer. In addition, he concluded that any deep vein thrombosis that Claimant might have was neither caused by, nor aggravated by, Claimant's work with Employer. Dr. Jarrett concluded that Claimant could return to work as a roofer if he wore supportive stockings on both legs.

On January 9, 1996, the WCJ issued a decision and order granting Claimant's claim petition and awarding him total disability benefits from October 23, 1993. The WCJ based his decision on the fact that Claimant had established an aggravation of his pre-existing non-work-related injury. Specifically, the WCJ found the testimony of both the Claimant and Dr. Reyes to be credible to the extent that they established a connection between the aggravation of the injury and Claimant's work. The WCJ also found the testimony of Dr. Jarrett, in which he opined that Claimant could return to work as of the date on which he examined Claimant, to be credible as well. Accordingly, the WCJ terminated Claimant's benefits as of that date, September 16, 1994. Both Claimant and Employer appealed to the Board which affirmed the decision. This appeal by Claimant only followed.

On appeal,[5] Claimant argues that the WCJ and the Board erred by concluding that he was capable of returning to work and terminating his benefits as of the date that Dr. Jarrett examined him.

 It is well settled that, in a claim petition proceeding, the claimant bears the burden of proving all elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). This burden includes establishing a continuing loss of earning power caused by a work-related injury. *Id.*

Although the timing of this case did not permit the parties to have the benefit of its guidance, our Supreme Court recently examined the effect of a preexisting non-work-related injury on a claimant's entitlement to continuing disability benefits once his or her symptoms have disappeared. In *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 708 A.2d 801 (1998), the claimant was a 31-year old welder who had suffered from asthma since childhood. While working for Bethlehem Steel, he experienced breathing problems as a result of his exposure to fumes from the paint used to paint freight cars. Although his lung functions returned to normal on August 22, 1991, Baxter did not return to work based on his physician's opinion that doing so would result in continued asthma

---

4. Deep vein thrombosis refers to a collapse of blood vessels. Specifically, in this case, it refers to the collapse of certain blood vessels which service the lower extremities.

5. Our standard of review is limited to determining whether necessary findings of fact are sup-

ported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

attacks, and he filed a claim petition seeking total disability benefits on September 3, 1991.

At the hearings before the WCJ, Baxter's doctor testified that, if Baxter returned to work with Bethlehem Steel, he would suffer from asthma attacks as a result of his preexisting, non-work-related asthmatic condition. The WCJ granted Baxter benefits, and both the Board and this Court affirmed that decision. Our Supreme Court, however, reversed the decision and held that a claimant is not entitled to benefits when no restrictions resulting from a work-related injury exist and only the *threat* of future recurrences of a preexisting, non-work-related injury keeps a claimant from performing his time-of-injury job. The Court noted that

[t]he [Act] is the means to obtain compensation for injuries which has been substituted for common law tort actions between employees and employers. *Kachinski v. Workmen's Compensation Appeal Board*, 516 Pa. 240, 532 A.2d 374 (1987). It undermines the principles of the Act to impose liability on an employer for the existence of a condition present from childhood when no residual work-related injury is demonstrated. Baxter was properly paid worker's compensation benefits for the period of time he was disabled by conditions at his workplace, as those conditions exacerbated his preexisting condition, but once he had fully recovered from that disability, he was ineligible for benefits.

*Bethlehem Steel,* 550 Pa. at 664–65, 708 A.2d at 804.

Recently, this Court examined the holding of *Bethlehem Steel* and concluded that, in order for a Claimant to be entitled to continuing benefits after his symptoms have disappeared, he must demonstrate that the underlying condition was **caused by** his work and not merely show that his work aggravated a preexisting non-work-related condition. *See Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Thomas),* 725 A.2d 873 (Pa.Cmwlth.1999).

In response, Claimant asserts that, under our Supreme Court's decision in *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass),* 515 Pa. 315, 528 A.2d 580 (1987), and this Court's holding in *Knapp v. Workmen's Compensation Appeal Board (GTE),* 671 A.2d 258 (Pa.Cmwlth.1996), he is entitled to continuing benefits.

The claimant in *Farquhar* developed a blood clot in her arm as the result of her work as a screen-maker with the employer. Following hospitalization, during which time she received benefits, the claimant's symptoms resolved. Employer offered her a new position instructing others as to how to make screens for the employer, but due to the fact that she still had to use her arms to demonstrate the screen-making process, this position aggravated the blood clot, and her doctor advised her to no longer perform strenuous activity with her arms.

The employer advised the claimant that there was no longer a need for a screen-making instructor, but offered her the preinjury screen-maker position. Claimant refused the position, was terminated and filed a petition seeking reinstatement of her benefits. At the hearings on the petition, the claimant's doctor credibly testified that the claimant's work **caused** the blood clot.

The WCJ denied the petition and the Board and this Court affirmed that decision. Our Supreme Court, however, reversed our decision, concluding that, because the claimant established that her work with her employer **caused** the initial condition, she was entitled to continuing disability benefits, despite the fact that she was asymptomatic, based upon the fact that she would be subject to another blood clot if she returned to work with her employer.

Conversely, in *Knapp,* we concluded that, in order to establish entitlement to continuing future benefits based upon an aggravation, a claimant must demonstrate that the aggravation arose in the course of his employment, the aggravation was caused by his employment, and, if he returns to work, he will experience another aggravation of the injury. The claimant in *Knapp* suffered from adult asthma which was unrelated to his employment with Employer. We granted benefits because he had established that his work had caused the aggravation of his preexisting non-work-related injury.

Based upon the above cases, Claimant argues that

[a] claimant who suffers from a pre-existing condition which is aggravated by his employment may still seek total disability benefits on the basis that these symptoms would probably reappear upon the claimant's return to his former position.

(Claimant's Brief at 7.) Although at the time Claimant's counsel wrote the above, it was a correct statement of the law, given our Supreme Court's decision in *Bethlehem Steel,* we cannot now agree that it is a complete statement of the law.

Although *Farquhar* continues to be sound law in this Commonwealth, the basis for our Supreme Court's decision in *Farquhar,* as well as our decisions in the cases following it, and indeed the fundamental distinction between those cases and *Bethlehem Steel,* was the fact that the condition underlying the claimant's injury in *Farquhar* did **not** exist before his employment with the employer, and **the claimant established that the injury was caused by his work.**[6]

 In the present case, there is no doubt from the record that Claimant experienced periods of phlebitis as early as 1985, well before the start of his employment with Employer. Indeed, in his testimony, Claimant acknowledged this fact. In addition, Claimant presented no testimony that the phlebitis that he currently experiences is of a different type or nature than that which he experienced in the 1980s. Claimant merely established that his work aggravated his preexisting non-work-related condition. His disability in that respect has ended however. Accordingly, because Claimant has failed to establish that the condition causing his disability, *i.e.,* phlebitis, was caused by his work, our Supreme Court's decision in *Beth-*

*lehem Steel* controls, and the WCJ properly ordered Claimant's benefits terminated upon proof of his recovery.[7]

Order affirmed.

## ORDER

**NOW,** March 22, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

Judge KELLEY concurs in the result only.

---

6. Although, in *Bethlehem Steel,* the Supreme Court did not address *Knapp,* we do find it significant that recently the Supreme Court reversed this Court's decision in *Fink v. Workmen's Compensation Appeal Board (Walbridge Corp.),* 678 A.2d 853 (Pa.Cmwlth.1996), *rev'd,* 551 Pa. 432, 710 A.2d 1139 (1998), a case which relied on *Knapp* for support and which Claimant in this case indicated was controlling. In addition, given that the holdings of *Knapp* and *Bethlehem Steel* cannot be reconciled, we believe that *Knapp* has been severely weakened, if not overruled, by

*Bethlehem Steel,* and therefore cannot support the Claimant's position in this case.

7. We note that the WCJ's rationale for terminating Claimant's benefits as of September 16, 1994, was that Claimant was capable of performing his time-of-injury job. Even if Claimant was asymptomatic but not capable of performing his time-of-injury job for fear of future aggravation of the phlebitis, he still would have his benefits terminated under *Bethlehem Steel.*