IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen Toro,                          :
                    Petitioner       :
                                     :
        v.                           :  No. 1585 C.D. 2019
                                     :  No. 1586 C.D. 2019
Workers' Compensation Appeal         :  SUBMITTED:  March 6, 2020
Board (Pocono Mountain School        :
District and Inservco Insurance      :
Services),                           :
                    Respondents      :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  April 29, 2020

        In these consolidated appeals, Karen Toro (Claimant) petitions for review of the

October 22, 2019 Orders of the Workers' Compensation Appeal Board (Board)

affirming the decisions of a workers' compensation judge (WCJ).[1]  In his decisions, the

WCJ dismissed Claimant's Claim Petition for Workers' Compensation Benefits (Claim

Petition) filed against Pocono Mountain School District (Employer) and granted

Employer's Petition to Terminate Workers' Compensation Benefits (Termination

Petition).[2]  For the reasons that follow, we affirm the Board's Orders.

---

[1] The Board entered the same Order under both agency docket numbers.

[2] Inservco Insurance Services is identified as a Respondent in the caption but did not file a
brief on appeal.

**Background**

On October 1, 2014, Claimant was injured in the course of her employment with Employer when she stood up from a desk chair and fell (October 2014 injury). Bd.'s Op., 10/22/19, at 1; WCJ's Finding of Fact (F.F.) No. 2.[3] Employer accepted Claimant's October 2014 injury as a neck strain in a Medical-Only Notice of Compensation Payable. WCJ's F.F. No. 2.

On August 31, 2017, Claimant filed a Claim Petition, averring that on March 3, 2017, while in the course of her employment with Employer, she injured her low back, neck, and knees when she fell from a wheeled desk chair (March 2017 injury). *Id.* No. 1.

On September 14, 2017, Employer filed a Termination Petition, averring that Claimant had fully recovered from the October 2014 injury as of April 19, 2017. *Id.* No. 2.

The WCJ held evidentiary hearings on September 29, 2017 and January 12, 2018, after which he made the following relevant factual findings. Claimant is 62 years old and has worked for Employer as a substitute teacher since 2007. *Id.* No. 3. On October 1, 2014, while she was standing behind a desk, Claimant's foot caught on a wire, causing Claimant to fall forward and jerk her neck. *Id.* As a result of the fall, Claimant injured her elbows, shoulders, and neck. *Id.*

Following the October 2014 injury, Claimant treated with Steven Mazza, M.D., who prescribed physical therapy and medication. *Id.* At the time of the January 12, 2018 hearing, Claimant was still treating with Dr. Mazza. *Id.* Claimant testified that she was restricted in her activities at home, such as cooking, cleaning, and personal

---

[3] The WCJ issued two identical decisions on November 20, 2018, one disposing of the Termination Petition and the other disposing of the Claim Petition. As such, the citations herein to the WCJ's findings of fact and conclusions of law can be found in both November 20, 2018 decisions.

2

grooming, because she had difficulty lifting. *Id.* Claimant regularly felt pain in her neck, arms, and low back, "but more[]so it was all my neck." *Id.*; Notes of Testimony (N.T.), 1/12/18, at 14. Dr. Mazza referred Claimant for a magnetic resonance imaging (MRI) of her neck; however, Claimant did not get the MRI "because something [was] wrong with the machine plus . . . I'm so highly claustrophobic[,] so I made [the appointment] and then . . . cancelled." WCJ's F.F. No. 3; N.T., 1/12/18, at 16.

Claimant further testified that on March 3, 2017, she fell from a wheeled desk chair while at work. *Id.* Claimant testified that she fell on her buttocks, and her neck hit the seat of the chair. *Id.* Claimant testified that after the March 2017 fall, she experienced more numbness and pain in her neck and pain in her shoulders. *Id.* Claimant immediately reported this incident to Employer's secretary, but Claimant did not see a doctor for the injury until April 24, 2017. *Id.* Claimant testified that before the March 2017 injury, her neck pain level was 5 or 6 out of 10, but after that injury, it was 10 out of 10. *Id.*

Claimant testified that she treats with Dr. Mazza every three months and takes Flexeril and Tramadol twice per day. *Id.* The amount of pain medication has not increased since the March 2017 injury. *Id.* Since the March 2017 injury, Claimant has had difficulty with grocery shopping and even more difficulty with cooking and cleaning than before the injury. *Id.* Her balance has worsened and she has trouble doing household chores. *Id.*

Claimant testified that after the March 2017 injury, she looked for a new job that involves less walking. N.T., 1/12/18, at 23. On Mondays and Thursdays, she teaches at the Monroe County Correctional Facility, which requires her to use a dry erase board. *Id.* at 29; WCJ's F.F. No. 3. Claimant also works in the evenings at CDE Institute, where she teaches medical office assistant classes 24 hours per week. WCJ's F.F. No.

3

3. That position requires her to stand and use a projector, but she uses a chair when needed. *Id.*

On cross-examination, Claimant testified that after the March 2017 injury, she had pain in her neck and shoulders and numbness in her hands. *Id.* She admitted that she had numbness and pain in her neck before the March 2017 fall, but she stated that the pain and numbness worsened after the fall. *Id.* Claimant testified that she also injured her low back during the March 2017 fall, but it was just "an ouch pain" and "nothing that drastic." *Id.*; N.T., 1/12/18, at 32. Claimant testified that the symptoms in her low back have not progressed. WCJ's F.F. No. 3. Claimant also hurt her knees during the fall, but she stated that it was "[j]ust an aching and . . . basically it went away." N.T., 1/12/18, at 32. Claimant testified that she has been walking with a cane consistently since 2013. WCJ's F.F. No. 3. Claimant testified that she is 4 feet, 8 inches tall, weighs 250 pounds, and has been that weight for about 4 years. *Id.*

Claimant presented the deposition testimony of her treating physician, Dr. Mazza, who is board certified in physical medicine and rehabilitation. WCJ's F.F. No. 5. Dr. Mazza testified that he first evaluated Claimant in June 2012 for an April 2012 work-related injury to her lumbar spine. *Id.* Before the October 2014 injury, he had seen Claimant most recently on August 26, 2014 for pain in her low back, knee, and lower extremity. *Id.*

Dr. Mazza testified that on the day of the October 2014 injury, Claimant went to an urgent care facility, complaining of pain radiating down her arms, intermittent numbness in her upper extremity, and pain in her low back, knee, and ankle. *Id.* Claimant was seen by a physician assistant, whose assessment was cervical neuritis, multiple contusions, and ankle and right knee pain. *Id.*; Mazza Dep., 2/27/18, at 8-9.

Dr. Mazza treated Claimant on October 21, 2014 for cervical tenderness and spasms. WCJ's F.F. No. 5. He recommended physical therapy, ice, and a muscle relaxer and limited her standing and walking to her tolerance level. *Id.* Claimant continued to treat with Dr. Mazza on an ongoing basis for her October 2014 injury. *Id.* In June 2015, Dr. Mazza recommended a cervical MRI, but Claimant did not get the study done. Mazza Dep., 2/27/18, at 37.

In November 2015, Claimant was stable but continued to have pain and numbness in her neck and upper extremity. WCJ's F.F. No. 5. Dr. Mazza again referred Claimant for an MRI, but she did not get the MRI because "there was a machine problem at [one] facility" and Claimant "was looking for an open MRI facility," but that facility "was too far for her to drive [there]." Mazza Dep., 2/27/18, at 13. Dr. Mazza referred Claimant for an MRI on two more occasions, in July 2016 and January 2017, but she did not get either study done. *Id.* at 37. Dr. Mazza continued to treat Claimant through January 6, 2017, and her symptoms did not significantly change during that time. *Id.* at 13-15; WCJ's F.F. No. 5.

Dr. Mazza testified that on April 24, 2017, Claimant went to an urgent care facility where she was seen by Dr. Nathan Johnson and a nurse practitioner. WCJ's F.F. Nos. 5, 7; Mazza Dep., 2/27/18, at 16. Claimant complained of neck and low back pain as a result of a fall at work on March 3, 2017. WCJ's F.F. No. 5. Upon examination, Dr. Johnson found "[n]othing significant" and "[n]o significant neurologic findings [were] noted." Mazza Dep., 2/27/18, at 17. Claimant was restricted to sitting and walking as tolerated with a five-pound lifting restriction. WCJ's F.F. No. 5. Dr. Johnson recommended that Claimant undergo an MRI. Mazza Dep., 2/27/18, at 17.

Dr. Mazza testified that he examined Claimant on May 30, 2017. WCJ's F.F. No. 5. Claimant complained of more neck pain radiating into her upper extremity and low-back pain radiating into her hips. *Id.* Dr. Mazza diagnosed cervical neuritis, cervical radiculopathy, and cervical segment dysfunction. *Id.* Claimant underwent a cervical MRI on June 14, 2017, which showed multi-level degenerative changes, significant degenerative disc disease, severe spinal canal stenosis at C4-5 and C5-6 with spinal cord compression, and myelomalacia. *Id.* Dr. Mazza explained that myelomalacia is "a fluid buildup within the structure of the spinal cord," which "indicates injury or damage to the nerves due to the more significant compression." Mazza Dep., 2/27/18, at 20.

Dr. Mazza referred Claimant to Christopher Wagener, M.D., an orthopedic spine surgeon, who examined her on July 7, 2017. WCJ's F.F. No. 5. A computerized tomography (CT) scan showed severe bony stenosis at C-3 through C-7. *Id.* Dr. Wagener recommended that Claimant undergo a surgical decompression and spinal fusion. *Id.*

Dr. Mazza testified that when he saw Claimant on October 24, 2017, her symptoms were "basically unchanged." *Id.*; Mazza Dep., 2/27/18, at 22. Dr. Mazza saw Claimant again on January 23, 2018, and his examination revealed "[n]o significant changes." WCJ's F.F. No. 5; Mazza Dep., 2/27/18, at 23.

Dr. Mazza opined, within a reasonable degree of medical certainty, that Claimant sustained acute cervical neuritis as a result of the October 2014 injury. WCJ's F.F. No. 5; Mazza Dep., 2/27/18, at 24. Dr. Mazza further opined that Claimant had not fully recovered from her October 2014 injury at that time. WCJ's F.F. No. 5.

With regard to the March 2017 fall, Dr. Mazza opined, within a reasonable degree of medical certainty, that Claimant sustained an aggravation of spinal stenosis

6

as a result of that fall, which caused radiculopathy and myelopathy. *Id.* The June 2017 MRI of Claimant's cervical spine showed "significant degenerative changes and degenerative disc disease and severe stenosis." Mazza Dep., 2/27/18, at 49-50. Dr. Mazza admitted that some of the findings on the June 2017 MRI were "age-related or degenerative." *Id.* at 29; WCJ's F.F. No. 5.

On cross-examination, Dr. Mazza testified that in 2012, Claimant had advanced degenerative changes and stenosis in her low back, which had progressed since 2010. WCJ's F.F. No. 5. Dr. Mazza also testified that before the October 2014 injury, Claimant had preexisting spinal stenosis and other degenerative changes in her cervical spine. Mazza Dep., 2/27/18, at 34, 52. Dr. Mazza testified that the October 2, 2014 x-rays of Claimant's cervical spine showed moderate degenerative changes. WCJ's F.F. No. 5.

Employer presented the deposition testimony of Lucian Bednarz, M.D., who is board certified in physical medicine and rehabilitation. *Id.* No. 4. Dr. Bednarz examined Claimant on December 12, 2014 and April 19, 2017. *Id.* During his December 2014 examination, Dr. Bednarz obtained from Claimant a history relating to the October 2014 injury. *Id.* Dr. Bednarz testified that as a result of the October 2014 fall, Claimant sustained contusions to her hands, a sprain to her ankles, and a contusion to her right knee, all of which were resolved. *Id.* At the time of Dr. Bednarz's December 12, 2014 examination, Claimant was still having muscle spasms related to the cervical strain she sustained in October 2014. *Id.* Dr. Bednarz further noted that Claimant had degenerative joint and disc disease and osteoarthritis in her spine. *Id.*

7

Dr. Bednarz testified that on April 19, 2017, he obtained an updated history from Claimant, and she reported an additional fall at work on March 3, 2017. *Id.*[4] Upon examination, Dr. Bednarz found "a change in [Claimant's] neurological status," "hyperreflexia of all of her extremities," "sensory changes," and "cervical range of motion restrictions." Bednarz Dep., 12/13/17, at 13-14. Dr. Bednarz testified that these neurological findings were unrelated to her October 2014 neck strain injury and resulted from the progression of her preexisting spinal stenosis. WCJ's F.F. No. 4.

Dr. Bednarz testified that he found no evidence of a neck strain, nor any residual effects of a neck strain, at the time of his April 19, 2017 examination. *Id.* Dr. Bednarz opined, within a reasonable degree of medical certainty, that Claimant had fully recovered from her October 2014 work injury at that time and that Claimant could perform her pre-injury job without restrictions. *Id.*; Bednarz Dep., 12/13/17, at 17.

On cross-examination, Dr. Bednarz testified that, at the time of his April 19, 2017 examination, Claimant's symptomatology in her cervical spine was "consistent with progressive spinal stenosis, which she has had since at least 2012. It's a slowly progressive process that leads to falls and gait dysfunction, sensory findings, and pain." Bednarz Dep., 12/13/17, at 25-26. Dr. Bednarz specifically declined to make a causal connection between his examination findings and Claimant's March 2017 fall. Bd.'s Op., 10/22/19, at 11.

Employer presented the deposition testimony of Joshua Auerbach, M.D., a board-certified orthopedist and spine surgeon. WCJ's F.F. No. 6. Dr. Auerbach examined Claimant on August 11, 2017 and obtained a history of her prior injuries. *Id.*

---

[4] At the time of Dr. Bednarz's April 19, 2017 examination, Claimant had not yet seen a doctor for the March 2017 injury. As discussed earlier, Claimant first sought medical treatment for that injury at an urgent care facility on April 24, 2017.

Dr. Auerbach also reviewed medical records from Dr. Mazza and Dr. Wagener, as well as the various diagnostic studies. *Id.*

Dr. Auerbach testified that Claimant related to him a "series of work[-]related injuries that took place, the first of which was [on] April 30, 2012." Auerbach Dep., 5/11/18, at 9. Claimant reported that she first experienced neck and low back pain after the April 2012 fall and never fully recovered from these symptoms thereafter. WCJ's F.F. No. 6.

Claimant reported to Dr. Auerbach that since the March 2017 injury, "she has worsening neck pain with pain in the arms, numbness and tingling into the fingers." Auerbach Dep., 5/11/18, at 12. Dr. Auerbach noted that Claimant had not "undergone any physical therapy as of the date of [his] exam." *Id.*

Dr. Auerbach testified that, based on his review of Claimant's medical records, Claimant had been inconsistent in her descriptions of the March 2017 fall. Claimant told Dr. Auerbach that "she fell backwards and hit her neck on the chair behind her and that led her to have increased neck pain." *Id.* at 21. However, Claimant previously reported to other providers that "she fell off a rolling chair at work[, which] caused her to land on the ground. There was no mention that she struck her head." *Id.* When Dr. Wagener saw Claimant on July 7, 2017, he "noted that [Claimant] had recently fallen off a chair, hitting her head, which is consistent with what she told [Dr. Auerbach] but not consistent with what she told other providers, and subsequent to that she's had multiple falls at work." *Id.* at 26.

Based on his examination of Claimant on August 11, 2017, Dr. Auerbach opined, within a reasonable degree of medical certainty, that Claimant had "experienced progressive degenerative disease, but did not in fact experience a work injury of March 3, 2017." *Id.* at 32; WCJ's F.F. No. 6. Dr. Auerbach noted that the first report of

9

medical treatment for the alleged injury was on April 24, 2017. WCJ's F.F. No. 6. Dr. Auerbach opined that "if [Claimant] had in fact sustained a new injury[,] there would have been reported a more contemporaneous timing of injury with the worsening of symptoms, and this would have either [been] reported and/or treated by a provider much sooner than [seven] weeks." Auerbach Dep., 5/11/18, at 32. Rather, Dr. Auerbach opined that Claimant's symptoms resulted from the progression of her degenerative spinal disease. WCJ's F.F. No. 6. He explained:

> [G]iven the absence of records that show contemporaneous complaints of pain with the timing of injury, coupled with the fact that there is a conflict as to what actually happened and whether or not [Claimant] struck her head, I would indicate there is no injury of March 3, 2017 that has led to the worsening of symptoms. . . . [I]f [Claimant] did seek medical treatment earlier and had more contemporaneous complaints of neck or worsening upper extremity or low back pain with the timing of injury, then that is something that would . . . need[] to be considered.

> But in the absence of these records, [I believe] this is the progression of [Claimant's] degenerative disease and not the result of [an] injury that took place [seven] weeks prior to seeking any medical treatment.

Auerbach Dep., 5/11/18, at 33.

On cross-examination, Dr. Auerbach admitted that no doctor had made a finding of hyperreflexia before Claimant's March 2017 injury, as it was first noted by Dr. Bednarz in April 2017. WCJ's F.F. No. 6. Dr. Auerbach explained that hyperreflexia can result from the progression of degenerative disease or an acute traumatic event. *Id.* He noted that hyperreflexia was not recorded in Dr. Johnson's notes from April 24, 2017, nor did Dr. Mazza find hyperreflexia when he examined Claimant on May 30, 2017. *Id.* Given Claimant's history of spine deterioration over time, Dr. Auerbach

10

concluded that her hyperreflexia was more likely the result of her progressive spinal disease rather than an acute event. *Id.*; Auerbach Dep., 5/11/18, at 36-37, 50.

On November 20, 2018, the WCJ issued two decisions, granting Employer's Termination Petition for the October 2014 injury and dismissing Claimant's Claim Petition for the March 2017 injury. First, the WCJ concluded that Employer proved by sufficient, competent, and credible evidence that Claimant had fully recovered from the October 2014 injury as of April 19, 2017. WCJ's Conclusion of Law (C.L.) No. 2; *see* WCJ's F.F. No 9. Second, the WCJ concluded that Claimant failed to prove by sufficient, competent, and credible evidence that she sustained an aggravation of her preexisting neck condition as a result of the March 2017 injury. WCJ's C.L. No. 3; *see* WCJ's F.F. No. 10.

The WCJ accepted as credible Dr. Bednarz's testimony that, at the time of his April 19, 2017 examination, Claimant had fully recovered from her October 2014 neck strain injury. WCJ's F.F. Nos. 8, 9. With regard to the March 2017 injury, the WCJ made the following credibility findings:

> This [WCJ] has compared and contrasted the testimony of the three . . . medical doctors in this matter. All of them are in agreement that the Claimant has severe spinal stenosis and that the Claimant is a surgical candidate. Dr. Mazza states this neurological involvement is caused by the March 3, 2017 fall. However, . . . the April 24, 2017 office notes show that the Claimant did not yet have neurological involvement and complaints on that date[,] which was seven . . . weeks after the [March 2017] injury. Accordingly, the opinion of Dr. Mazza in this regard is rejected. The opinions of Drs. Auerbach and Bednarz that the Claimant's condition is a result of the natural progression of spinal stenosis are accepted as credible.

*Id.* No. 8.

11

Finally, the WCJ credited Claimant's testimony that she experienced "significant pain and that her day[-]to[-]day activities are impaired by this pain." *Id.* No. 7. However, the WCJ ultimately found that "Claimant's credibility is dubious with respect to her history and the progression of her symptoms." *Id.* In particular, the WCJ noted that "the entire timing of this case is rather unusual" because "Claimant sustained her second work injury on March 3, 2017" and immediately "reported the injury [to Employer] but did not seek [medical] treatment" until seven weeks later. *Id.* The WCJ further determined:

> Claimant [testified] that following the March 3, 2017 incident[,] she did not see any doctor until she saw Dr. Johnson and his [n]urse [p]ractitioner on April 24, 2017 because that was the earliest appointment she could get. However, Dr. Mazza's testimony makes it clear that Dr. Johnson and his [n]urse [p]ractitioner practice in the [u]rgent [c]are part of the practice. This is inconsistent with the Claimant's testimony since the nature of [u]rgent [c]are is that somebody can come in on an emergency basis. The Claimant obviously did not wait seven . . . weeks for an [u]rgent [c]are appointment.

*Id.*

On appeal, the Board affirmed the WCJ's decisions, concluding as follows:

> As to the claim for a new injury in [March] 2017, the onus was on Claimant to establish entitlement to relief. In this respect, *because the WCJ rejected the testimony of Dr. Mazza purporting to establish that Claimant sustained an injury requiring treatment, she could not meet her burden of proof.* With regard to the Termination Petition for the [October] 2014 injury, *because the WCJ accepted Dr. Bednarz'[s] testimony that as of the time of his examination on April 19, 2017 she had fully recovered, [Employer] was able to meet its burden of proof.* Rendering credibility determinations is the quintessential function of the fact[]finder.

> Claimant asserts that [Employer's medical] evidence was insufficient to defeat her claim for a new injury or a continuing work injury. *The WCJ did not find the opinions of these physicians to be*

12

*contradictory* and our review fails to support Claimant's contention that they are inconsistent. *Dr. Bednarz did not, contrary to Claimant's contention, opine that Claimant sustained a new injury in 2017, as he specifically declined to make a causal connection between any examination findings and a 2017 incident. Dr. Auerbach, contrary to Claimant's contention, did not relate Claimant's complaints to her 2014 work injury but to her underlying degenerative condition and the progression of her severe disease process.* With her contentions, Claimant is essentially asking us to reweigh the evidence, but questions of weight and credibility are for the fact[]finder.

Bd.'s Op., 10/22/19, at 10-11 (internal citations omitted) (emphasis added). Claimant now petitions this Court for review.[5]

## Analysis

### 1. Termination Petition for October 2014 Injury

Claimant asserts that the WCJ's decision granting Employer's Termination Petition "represent[s] a travesty of justice" and is unsupported by substantial evidence. Claimant's Br. at 21. Specifically, Claimant contends that the WCJ "ignore[d] Dr. Auerbach's testimony that . . . Claimant's medical records indicate that she had been stable with her neck pain and that her neck and upper extremity symptoms were unchanged as of the January 6, 2017 office visit with Dr. Mazza." *Id.* at 21. Claimant asserts that this testimony, together with Claimant's evidence, established that she has not recovered from the October 2014 neck strain injury. We disagree.

"To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased[] or [that] any remaining conditions are unrelated to the work injury." *Westmoreland County v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer satisfies

---

[5] Our scope of review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

13

this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered[] [and] can return to work without restrictions and that there are no objective medical findings [that] either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). The WCJ may terminate benefits only if the WCJ finds that the claimant is fully recovered from all aspects of the work injury. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

Here, the WCJ credited the testimony of Employer's medical expert, Dr. Bednarz. Dr. Bednarz opined that, as of April 19, 2017, Claimant was fully recovered from her October 2014 neck strain injury. WCJ's F.F. Nos. 4, 9. Dr. Bednarz explained, "The residual deficits from the [October 2014] work injury including the cervical . . . sprain, strain at that point had resolved, typically does within a few months. [Claimant] no longer had muscle spasms and [she had] functional range. She had completed treatment." Bednarz Dep., 12/13/17, at 14. Dr. Bednarz found new neurological symptoms in Claimant's spine that he believed needed further evaluation, but he opined that "they were unrelated to [Claimant's October 2014] work injury." *Id.* Rather, Dr. Bednarz opined that Claimant's symptoms in April 2017 resulted from the natural progression of her preexisting spinal stenosis, which she has had since at least 2012. WCJ's F.F. No. 4; Bednarz Dep., 12/13/17, at 25. Finally, Dr. Bednarz testified that his review of the recent medical records, including the June 2017 MRI, "confirmed that [Claimant] did have an underlying spinal stenosis" but revealed "no other acute abnormalities," and thus, his opinion that Claimant's "work[-]related [neck] sprain had resolved, therefore, remained unchanged." Bednarz Dep., 12/13/17, at 17. We agree with the Board that Dr. Bednarz's testimony, which the WCJ credited,

14

established that Claimant had fully recovered from her October 2014 work injury as of April 19, 2017.

We further reject Claimant's contention that the testimony of Employer's medical experts contradicted each other and were, thus, incompetent to support the WCJ's findings. Contrary to Claimant's assertion, Dr. Auerbach did not testify that Claimant's symptoms in April 2017 stemmed from the October 2014 neck strain injury. Rather, like Dr. Bednarz, Dr. Auerbach opined that Claimant's symptoms in April 2017 were the result of the natural progression of her degenerative spinal stenosis, which she has had since at least 2012. WCJ's F.F. No. 6; Bd.'s Op., 10/22/19, at 11.

In concluding that Claimant had fully recovered from her October 2014 neck strain injury, the WCJ accepted the medical opinion of Dr. Bednarz as credible, rejected the contrary opinion of Dr. Mazza, and explained his reasons for doing so. WCJ's F.F. Nos. 8, 9. In a workers' compensation proceeding, the WCJ is the ultimate factfinder, and matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's sole province. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). The WCJ's findings are binding on appeal as long as they are supported by substantial evidence. *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004). We conclude that Dr. Bednarz's testimony constitutes substantial, competent evidence to support the WCJ's findings. Therefore, the Board properly affirmed the WCJ's grant of Employer's Termination Petition.

### 2. Claim Petition for March 2017 Injury

Next, Claimant asserts that the WCJ's decision dismissing her Claim Petition "represent[s] a travesty of justice" and is unsupported by substantial evidence. Claimant's Br. at 21. Claimant asserts that Dr. Mazza opined that Claimant had

continued neck pathology stemming from the October 2014 injury, which was aggravated by the March 2017 injury. Claimant also contends that the WCJ ignored Dr. Bednarz's testimony that when he saw Claimant in April 2017, a few weeks after the March 2017 injury, he found new neurological symptoms in her cervical spine.

In a claim proceeding, the claimant bears the burden of establishing all elements necessary to support an award. *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove both the existence of a work-related injury and that the injury continues to cause disability throughout the pendency of the claim petition. *Id.* A claimant seeking compensation for the aggravation of a preexisting condition must prove that: (1) the aggravation arose in the course of his or her employment, and (2) the aggravation was related to that employment. *Knapp v. Workmen's Comp. Appeal Bd. (GTE)*, 671 A.2d 258, 261 (Pa. Cmwlth. 1996).[6] If it is unclear whether the aggravation injury was related to the claimant's employment, unequivocal medical testimony is necessary. *Id.*

While Claimant testified that her neck symptoms worsened after the March 2017 injury, the WCJ expressly discredited her testimony regarding her history and the progression of her symptoms and explained his reasons for doing so. WCJ's F.F. No. 7. In particular, the WCJ noted that Claimant: disregarded Dr. Mazza's multiple recommendations for a cervical MRI for two years; delayed seeking medical treatment for the March 2017 injury for seven weeks; provided inconsistent accounts of the March 2017 fall; and was not forthcoming with Dr. Bednarz about the March 2017 injury. *Id.* Nos. 5-7. The WCJ also rejected Dr. Mazza's opinion that Claimant sustained an aggravation injury on March 3, 2017 as not credible, because Claimant

---

[6] A work-related aggravation of a preexisting condition is an "injury" within the meaning of Section 301(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1). *See Knapp*, 671 A.2d at 261 n.2.

16

sought no medical treatment until seven weeks later. *Id.* No. 8. Notably, Dr. Mazza did not attempt to explain the reason for this significant time gap.

In contrast, the WCJ credited the opinions of Dr. Auerbach and Dr. Bednarz that Claimant's symptoms in April 2017 resulted from the natural progression of her spinal stenosis, which preexisted her October 2014 injury. WCJ's F.F. Nos. 8, 10. While Dr. Auerbach acknowledged the possibility that an acute injury could aggravate Claimant's preexisting spinal condition, he ultimately determined that Claimant did not suffer an acute injury on March 3, 2017 as she had claimed. *Id.* No. 6. Dr. Auerbach explained that if Claimant had sustained a new acute injury, she would have experienced a significant change in symptoms immediately afterward, warranting more contemporaneous medical treatment. *Id.* Dr. Auerbach credibly testified that Claimant's significant delay in seeking medical treatment was inconsistent with having experienced a material increase in symptoms as a direct result of the March 2017 fall. *Id.* In rendering his opinions, Dr. Auerbach also considered Claimant's long history of degenerative spinal disease, including the severe, end-stage osteoarthritis in her lumbar spine, as further support for his conclusion that Claimant is suffering from the same progressively degenerative disease in her cervical spine. Auerbach Dep. 5/11/18, at 24-25; *see* WCJ's F.F. Nos. 8, 10.

Furthermore, Dr. Bednarz credibly testified that the finding of hyperreflexia in April 2017 was also the result of Claimant's degenerative spinal stenosis. WCJ's F.F. No. 4. Dr. Bednarz explained, "[Y]ou reach a critical state of stenosis where you suddenly develop a compromise to the spinal cord that elicits rather acute findings, so that [an] individual with known spinal stenosis for many years will develop those findings[,] and when they do they're rather dramatic[,] and [Claimant's] were quite obvious." Bednarz Dep., 12/13/17, at 26; *see* WCJ's F.F. No. 8.

17

As noted earlier, the WCJ, as the factfinder, was free to reject the testimony of Claimant and Dr. Mazza and to accept the testimony of Employer's medical experts as credible. *See Williams*, 862 A.2d at 143. We conclude that the testimony of Dr. Auerbach and Dr. Bednarz constitutes substantial, competent evidence to support the WCJ's findings. Therefore, the Board properly affirmed the WCJ's dismissal of Claimant's Claim Petition.

## **Conclusion**

Accordingly, we affirm the Board's Orders.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Karen Toro,        :
    Petitioner    :
            :
  v.         : No. 1585 C.D. 2019
            : No. 1586 C.D. 2019
            :
Workers' Compensation Appeal  :
Board (Pocono Mountain School  :
District and Inservco Insurance  :
Services),       :
    Respondents  :

# **O R D E R**

AND NOW, this 29th day of April, 2020, the Orders of the Workers' Compensation Appeal Board, dated October 22, 2019, are hereby AFFIRMED.

_____
ELLEN CEISLER, Judge