Advance Auto Parts and        :
Sedgwick CMS,               :
            Petitioners     :
                           :
        v.               :    No.  300 C.D. 2020
                           :    Submitted: September 4, 2020
Workers' Compensation Appeal  :
Board (Morton),            :
            Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON            FILED:  December 4, 2020

        Advance Auto Parts and Sedgwick CMS (collectively, Employer) petition for review of an opinion and order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of the Workers' Compensation Judge (WCJ), denying Employer's petition to terminate (Termination Petition) David Morton's (Claimant) workers' compensation benefits based on his full recovery from his work-related injury.  Employer contends that the Board erred in denying the Termination Petition, where the medical evidence established that Claimant fully recovered from his work-related hernia and that his remaining medical issues relate solely to his preexisting abdominal condition.  For the following reasons, we affirm.

        Claimant in this case has a long and complicated medical history, including a history of ulcerative colitis.  The following facts pertaining to the

Claimant's medical history were set forth in this Court's Memorandum Opinion and Order dated August 14, 2020, denying supersedeas in this matter:

> In 1999, Claimant underwent surgery to remove his entire colon. Following that surgery, Claimant developed a hernia at the surgical site. Claimant's physician[, Dr. Rovinder Sandhu,] repaired the hernia using surgical mesh[,] and the surgery was initially successful. Between 2000 and 2009, however, Claimant experienced other hernias that also were repaired with surgical mesh. The surgical mesh eventually became infected and had to be removed in [April] 2014. Claimant's physician removed the infected mesh and repaired the hernia without using mesh, until a more opportune time to insert new mesh became available.

*See Advance Auto Parts v. Workers' Comp. Appeal Bd. (Morton)* (Pa. Cmwlth., No. 300 C.D. 2020, filed Aug. 14, 2020), slip op. at 1-2; *see also* 1/29/2019 WCJ Decision, Findings of Fact (F.F.) No. 1.

On August 6, 2014, approximately two months after beginning employment as a parts professional for Employer, Claimant was injured while lifting an automobile transmission in the course and scope of his employment. On September 18, 2014, Employer issued a Notice of Temporary Compensation Payable (NTCP) for an injury described as an abdominal strain, and Claimant began receiving compensation, pursuant to the provisions of the Workers' Compensation Act (Act).[1] The NTCP converted to a Notice of Compensation Payable by operation of law at the expiration of 90 days. Section 406.1 of the Act, 77 P.S. § 717.1.[2]

On September 5, 2017, Employer filed the Termination Petition, contending that Claimant had recovered from his work-related injury as of May 5, 2017. A hearing on the termination petition was held before the WCJ on September 29, 2017. At the outset, Employer agreed that Claimant's accepted injury of an

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2710.

[2] Section 406.1 of the Act was added by Section 3 of the Act of February 8, 1972, P.L. 25.

2

abdominal strain also included a hernia. 9/29/2017 Hearing Transcript (Hr'g Tr.) at 5-6; Reproduced Record (R.R.) at 39a-40a.

In support of termination of Claimant's benefits, Employer presented the deposition testimony of Robert S. Bloch, M.D., who is board certified in general surgery. Dr. Bloch 3/13/2018 Deposition (Bloch Dep.), at 6-7; R.R. at 185a-86a. Dr. Bloch testified that he maintains a surgical practice, approximately 25% of which involves treating hernias and abdominal wall injuries. Dr. Bloch conducted an independent medical examination (IME) of Claimant on May 5, 2017, at Employer's request. Dr. Bloch testified that, at the time of the IME, Claimant indicated he was 62 years old and had a long history of ulcerative colitis that resulted in Claimant needing to undergo multiple hernia repair surgeries thereafter. Dr. Bloch explained that Claimant's most recent hernia repair occurred in 2008, prior to Claimant's work-related injury. Dr. Bloch further testified that, in 2014, Claimant developed an infection caused by the mesh used to repair the 2008 hernia, which necessitated that Claimant undergo surgery to remove the mesh in April 2014. Bloch Dep. at 22-23; R.R. at 201a-02a. The hernia was repaired, but Dr. Bloch opined that Claimant would need to undergo additional surgery to insert new mesh approximately one year later, after the area had healed. Bloch Dep. at 23-25; R.R. at 202a-04a. However, in the interim, Claimant developed the work-related hernia, and, as a result, he underwent abdominal wall reconstruction surgery on October 6, 2015. Claimant's abdominal wall reconstruction surgery seemed to hold up well for eight or nine months and appeared to be successful. "Sometime" after the surgery, however, Claimant noticed bulging in his abdominal wall. Bloch Dep. at 12; R.R. at 191a. At the time of the IME, Dr. Bloch opined this was a "recurrent hernia." *Id.* Claimant had not returned to work since his 2015 surgery; thus, according to Dr.

3

Bloch, the recurrent hernia was not caused by his employment. Notably, Claimant has had a number of hernia repairs. Dr. Bloch stated that "[e]ach time you [have surgery], it gets harder. It gets much harder to fix." Bloch Dep. at 20-21; R.R. at 199a-200a. However, Dr. Bloch conceded that after surgery, even without any new trauma, a hernia can reoccur. Dr. Bloch stated that he was unaware if the recurrent hernia would be considered a work injury or not, as it was for the lawyers to "fight it out." Bloch Dep. at 40; R.R. at 219a.

Claimant presented the deposition testimony of his treating physician, Rovinder Sandhu, M.D., who is board certified in general surgery and surgical critical care. Dr. Sandhu 6/18/2018 Dep. (Sandhu Dep.), at 9; R.R. at 105a. Dr. Sandhu performed the 2014 surgery that removed the infected mesh from Claimant's abdomen. He also treated Claimant for his work-related hernia and performed the 2015 surgery. Dr. Sandhu testified that the 2015 surgery was initially successful. However, Claimant "developed a [hernia] recurrence superior to where the mesh [wa]s placed, in the area between what's called xiphoid process and the mesh, where there's not a great area to hold the mesh, not great tissue, due to the rib cage and the diaphragm being nearby. And it looks like it's recurred up there." Sandhu Dep. at 14; R.R. at 110a. A bulge in Claimant's abdomen was first noticed during his post-operation appointment on February 10, 2016. Sandhu Dep. at 34; R.R. at 130a. A computerized axial tomography (CAT) scan initially did not show a hernia, but another CAT scan done on April 5, 2017, established that the hernia recurred. Sandhu Dep. at 34-36; R.R. at 130a-32a. Dr. Sandhu described the hernia that exists now as "an extension of th[e] original hernia, the uppermost portion of it." Sandhu Dep. at 18; R.R. at 114a.

4

Dr. Sandhu was unsure if additional surgery was warranted. Sandhu Dep. at 43; R.R. at 139a. He doubted that the mesh could be successfully reinforced due to the lack of tissue in the area. *Id.* Claimant will never be completely pain free based on the multiple surgeries to his abdominal wall. Sandhu Dep. at 17-18; R.R. at 113a-14a. Assuming Claimant's pain remains tolerable, Dr. Sandhu does not recommend further surgery. Sandhu Dep. at 18; R.R. at 114a. Dr. Sandhu opined that Claimant cannot return to work in his prior position with Employer. Due to the hernia, he cannot do any heavy lifting. Sandhu Dep. at 20; R.R. at 116a.

Claimant testified at a hearing held before the WCJ on January 12, 2018. Claimant testified that he worked as an automobile mechanic for most of his life. 1/12/2018 Hr'g Tr. at 17; R.R. at 62a. Because of his abdominal issues, he decided to try the automotive parts field, believing it would be less strenuous. He testified that his job with Employer required him to lift automotive parts weighing up to 40-50 pounds. He was required to stock parts on shelves, climb the shelves, and retrieve parts from the shelves. 1/12/2018 Hr'g Tr. at 17-18; R.R. at 62a-63a.

At the hearing, Claimant removed his shirt and showed the WCJ the bulge from his hernia. Claimant stated that the hernia started to grow about three months after the 2015 surgery and has gotten larger. 1/12/2018 Hr'g Tr. at 27; R.R. at 72a. Claimant advised that it would be impossible to return to work in his current position, as Dr. Sandhu restricted him from lifting more than five pounds. Further, the hernia is painful, some days more than others. 1/12/2018 Hr'g Tr. at 15; R.R. at 60a. It hurts even when he lifts something lightweight.

On January 29, 2019, the WCJ issued a decision, denying Employer's Termination Petition. In doing so, the WCJ first found Claimant's testimony, which was similar to that of both expert witnesses, to be credible. WCJ Decision, F.F. Nos.

5

5-6. The WCJ then compared the testimony of the expert witnesses and found such testimony to be largely in agreement regarding Claimant's medical history and the outcome of his 2015 surgery, and thus, "essentially credible." F.F. Nos. 7-9. The WCJ noted Dr. Bloch's testimony that Claimant fully recovered after his October 2015 hernia repair surgery, as well as his belief that the recurrent hernia was not work-related because Claimant had not returned to work between the time of the 2015 surgery and the hernia recurrence. F.F. No. 8. The WCJ further noted, however, that Dr. Bloch was "very candid in his testimony that this is an extremely difficult call to make and that the final conclusion is [not a medical conclusion, but] a legal one." F.F. No. 8. The WCJ then observed Dr. Sandhu's testimony that Claimant sustained the recurrent hernia because the mesh failed at the upper regions of the abdomen where there is less tissue to hold the mesh in place. F.F. No. 9. Although the WCJ found that both experts were "essentially credible" and that they agreed that the reason for Claimant's most recent hernia was the failure of the repair of his work-related hernia, the WCJ nevertheless determined that the testimony of Dr. Sandhu, Claimant's treating physician, was slightly more credible than the testimony of Dr. Bloch, the IME physician. F.F. Nos. 7, 9. The WCJ therefore rejected Dr. Bloch's testimony to the extent it differed from Dr. Sandhu's testimony. F.F. No. 9. Furthermore, because Claimant established, and it was undisputed, that his current hernia was the result of the failure of the repair to the work-related hernia, the WCJ found as fact that the recurrent hernia was work-related and that Claimant had not fully recovered from his August 6, 2014 work injury. F.F. Nos. 10-11. The WCJ therefore concluded that Employer failed to meet its burden of proving that Claimant had fully recovered from his August 6, 2014 work injury as of May 5,

6

2017, and denied and dismissed Employer's Termination Petition. WCJ Decision, Conclusion of Law No. 2.

Employer appealed to the Board, which affirmed the WCJ's decision. Before the Board, Employer claimed that the 2014 work-related hernia was successfully repaired and no longer exists, and that the hernia that subsequently developed was attributable to Claimant's non-work-related, and compromised, abdominal wall. The Board disagreed, stating that the burden is on Employer to establish there are no objective medical findings to substantiate any ongoing complaints that are connected to the work injury. Dr. Sandhu testified that the corrective surgery subsequently failed and a recurrent hernia manifested. The Board determined that this established a direct relationship between the accepted work injury and Claimant's present complaints. Thus, the Board affirmed the decision of the WCJ.

Employer now petitions for this Court's review, raising one issue.[3] Employer contends that the Board erred by failing to terminate Claimant's benefits, when both medical experts agreed that the surgical repair of the work-related injury was initially successful and the hernia had resolved.

To succeed in a termination petition, the employer bears the burden of proving that the claimant's disability has ceased and/or that any current disability is unrelated to the claimant's work injury. *Jones v. Workers' Comp. Appeal Bd. (J.C. Penney Co.)*, 747 A.2d 430, 432 (Pa. Cmwlth. 2000). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's

---

[3] On review, we determine whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact were supported by substantial competent evidence. *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

7

full recovery from his/her work-related injuries. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011). Where an employer alleges the existence of an independent cause of the claimant's continuing disability unrelated to the work injury, the burden remains on employer to prove that such cause exists. *City of Philadelphia v. Workers' Comp. Appeal Bd. (Fluek)*, 898 A.2d 15, 19 (Pa. Cmwlth. 2006). An employer's burden is considerable, since disability is presumed to continue until demonstrated otherwise. *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993).

A work-related aggravation of a non-work-related preexisting condition is an "injury" within the meaning of the Act. *Pawlosky v. Workmen's Comp. Appeal Bd. (Latrobe Brewing Co.)*, 525 A.2d 1204, 1210 (Pa. 1987). However, a claimant with a preexisting, non-work-related condition, although disabled from the workplace because of this condition, is not entitled to benefits where the workplace did not cause or aggravate the condition. *Schneider, Inc. v. Workmen's Comp. Appeal Bd. (Dobbin)*, 664 A.2d 232, 235 (Pa. Cmwlth. 1995).

Employer argues that Claimant's 2015 surgery was successful. Pointedly, following the surgery, Claimant no longer had a hernia and, thus, had returned to baseline status. Employer contends that although Claimant developed a new hernia, it was not due to the surgery but, rather, was due to his preexisting abdominal problems. Therefore, Employer claims it established that Claimant fully recovered from his work-related hernia and benefits should be terminated.

In support, Employer cites to *Bethlehem Steel Corporation v. Workers' Compensation Appeal Board (Baxter)*, 708 A.2d 801 (Pa. 1998). There, the claimant suffered from asthma since childhood and, while employed as a welder, developed

breathing problems when exposed to paint fumes. The claimant's lung function eventually returned to normal, but his doctor recommended he not return to work because he was at risk for further exacerbation of his asthmatic condition. The claimant filed a claim petition, the WCJ granted benefits, and the WCJ's decision in the case was affirmed by the Board and this Court. The Supreme Court reversed, advising that the claimant had the burden of proving an injury and a loss of earning power. The claimant's medical evidence established that there was no ongoing condition that affected his pulmonary capacity. As such, the claimant no longer suffered from the work-related injury. The claimant was entitled to benefits for the period of time he was disabled by the workplace conditions that exacerbated his preexisting asthmatic condition, but once he had recovered, he became ineligible for benefits. As such, the claimant only established a threat of future recurrence of a work injury due to a preexisting, non-work-related injury. The Court determined this was not a compensable injury under the Act.

Employer also cites to *Meadville Forging Company v. Workers' Compensation Appeal Board (Hawes)*, 726 A.2d 1111 (Pa. Cmwlth. 1999). There, the claimant's job involved programming a computer to cut metal parts and then manipulating the metal parts with his hands while the parts were exposed to coolants. The claimant began to experience numbness in his fingertips, which caused a loss of the dexterity needed to manipulate the parts. His doctor restricted him from exposure to the coolants. The employer gave the claimant gloves for protection, but the claimant was unable to do the job properly with gloves. The claimant was transferred to another position for a short period of time and eventually laid off.

The claimant then filed a claim petition. The evidence accepted by the WCJ established that the claimant suffered from Raynaud's Phenomenon, a non-

work-related medical condition elicited by using the fingers to tightly grasp objects or by cold temperatures. While the claimant's job was not the cause of the condition, it did aggravate the condition. As such, the WCJ granted benefits and the Board affirmed. On appeal to this Court, the employer argued that the claimant was not entitled to ongoing benefits because the job did not cause the claimant's medical condition, and the claimant was no longer suffering an aggravation of the condition. We agreed and reversed, basing our determination on *Bethlehem Steel*.

Here, Claimant responds to Employer's arguments by claiming that his work-related injury has not terminated. He relies on Dr. Sandhu's testimony that Claimant's present injury is an extension of the work-related hernia, and the WCJ credited this testimony. Claimant also asserts that Employer continues to argue that Claimant fully recovered from the 2015 work-related hernia and that the hernia that developed after the 2015 surgery is attributable to his preexisting abdominal condition. However, Claimant points out that the WCJ rejected that claim.

Before this Court, Employer argues that the evidence submitted by both parties shows that after the surgical repair of the work-related hernia, Claimant returned to his baseline condition. Then, due to Claimant's compromised abdomen, a new hernia developed. Thus, like the claimants in *Bethlehem Steel* and *Meadville*, Employer asserts that Claimant is no longer suffering from a work-related condition. Instead, Employer argues that Claimant's injury is due to a preexisting, non-work-related injury, and he is therefore not entitled to benefits.

While the law set forth in *Bethlehem Steel* and *Meadville* is sound, Employer's reliance on the factual scenarios therein in relation to this case is misplaced. Here, Dr. Sandhu neither testified that a new hernia developed because of Claimant's preexisting, non-work-related abdominal condition, nor did the WCJ

10

make a factual finding that Claimant's current medical condition was caused by his preexisting, non-work-related abdominal condition.

The law is well established that "[t]he WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011). "The WCJ . . . is free to accept or reject, in whole or in part, the testimony of any witness, including medical witnesses." *Griffiths v. Workers' Comp. Appeal Board (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000). When considering whether the WCJ's decision is supported by substantial evidence, we "must view the evidence in a light most favorable to the party who prevailed before the factfinder" and "draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party." *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003). "[I]t does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ. Rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Id.*

The WCJ credited the testimony of Dr. Sandhu, who performed the 2015 surgery to repair the work-related hernia. Dr. Sandhu testified that the surgery initially appeared successful, but within months, Claimant developed an abdominal bulge, and a CAT scan later confirmed the presence of a hernia. Dr. Sandhu stated that the hernia was "an extension of that original hernia, the uppermost portion of it." Sandhu Dep. at 18; R.R. at 114a. He observed that "the abdominal wall is one big unit[,]" and that the mesh in the lower area is stable and "seems to be taking care of the rest of the hernia." Sandhu Dep. at 51; R.R. at 147a. He explained, however,

11

that the upper portion of the abdominal wall has less tissue to hold the mesh, and that "the mesh had broke[n] away from the weak tissue and that's what occurred." Sandhu Dep. at 39; R.R. at 135a. Dr. Sandhu also explained that the abdominal wall was compromised due to Claimant's prior hernia, but the work-related "hernia had weakened it as well." Sandhu Dep. at 47; R.R. at 143a. In fact, Employer's expert, Dr. Bloch, conceded that a curative repair to a hernia can break down "at times[,]" and, unfortunately, this curative repair of Claimant's hernia had broken down. Bloch Dep. at 36; R.R. at 215a.

In sum, both medical experts agreed that the repair to the work-related hernia had failed; neither expert testified that the repair failed for solely non-work-related reasons. Importantly, the WCJ credited the testimony of Dr. Sandhu that the present hernia is an extension of the uppermost portion of the work-related hernia, which is substantial competent evidence to support the WCJ's determination. As such, the Board did not err in its conclusion that "because the corrective surgery subsequently failed, there is a direct relationship between the accepted work injury and Claimant's present complaints." Board Opinion, dated 3/10/2020, at 5. Thus, the order of the Board is affirmed.

_____
J. ANDREW CROMPTON, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Advance Auto Parts and     :
Sedgwick CMS,       :
     Petitioners  :
           :
    v.       : No.  300 C.D. 2020
           :
Workers' Compensation Appeal  :
Board (Morton),      :
     Respondent  :

# **O R D E R**

  **AND NOW**, this 4th day of December 2020, the order of the Workers' Compensation Appeal Board, dated March 10, 2020, is hereby AFFIRMED.

            _____
            J. ANDREW CROMPTON, Judge